## CHARLES McNARY
### v.
## THE PEOPLE.

*Criminal Law—Information—Charge of Assault with Deadly Weapon against Two Defendants—Conviction of One—Instructions—Costs.*

1.  Where an information charged the plaintiff in error and his brother with an assault with a deadly weapon, " to wit, a club and knife," an instruction to the jury that the information charged the defendants with making an assault with a deadly weapon with intent, etc., and that if the jury believe, from the evidence, beyond a reasonable doubt, that the defendants, as charged, did make the assault with a deadly weapon with an intent, etc., and where no considerable provocation appeared, or the circumstances showed abandoned and malignant hearts, they should return a verdict of guilty, was not erroneous, although the evidence tended to show an assault by the plaintiff in error alone and with a club only.

2.  A deadly weapon is a weapon likely to produce death or great bodily harm by the use made of it.

3.  It is not error for the court to refuse certain instructions, although

McNary ⁀v. The People.

they contain a correct statement of the law on the topics covered by them where the jury are elsewhere properly instructed on the same points.

4. In the case presented, this court declines to interfere with the decision of the court below, refusing an apportionment of costs, it not appearing that any costs were made, not necessary for the prosecution of the case as against the plaintiff in error.

[Opinion filed November 23, 1889.]

In error to the County Court of Clark County; the Hon. H. Gassaway, Judge, presiding.

Mr. S. S. Whitehead, for the plaintiff in error.

Mr. T. L. Orndorff, State's Attorney, for the defendants in error.

Pleasants, P. J.   This was an information against plaintiff in error and his brother, John, charging an assault on Samuel Graham "with a certain deadly weapon, to wit, a club and knife," with intent to do a bodily injury.   There were two counts, alike in all respects, except that one alleged there was no considerable provocation and the other that the circumstances showed an abandoned and malignant heart.   John was acquitted but Charles was found guilty and judgment rendered accordingly.

Exceptions were taken to almost everything allowed or refused by the court, and are here urged with a freedom of reflection upon the judge, which we think unwarranted and feel bound to rebuke.   While we mean to give all due consideration and weight to argument it should be understood that the endeavor to do so is more likely to be frustrated than aided by the interjection of such matter as appears on page 10 of the brief for plaintiff in error.

The first instruction given for the people stated that the information charged the defendants with making an assault upon Graham with a deadly weapon (not designated) with intent, etc.; and that if the jury believed from the evidence, beyond a reasonable doubt, that the defendants, as charged,

did make an assault upon the person of said Graham with a deadly weapon, instrument or other thing, with an intent, etc., and where no considerable provocation appeared, or the circumstances showed abandoned and malignant hearts, they should return a verdict of guilty.

There was an abundance of evidence tending to prove an assault by Charles with a club only, and that, although John, from some distance seeing two men holding him, rushed to the scene with a knife, he did not arrive until that assault was over and Graham had withdrawn beyond his immediate reach. Upon this state of the proof it is claimed that the instruction so given was erroneous in " not being confined to the only one of two alleged deadly weapons charged, which was in any way sustained by the proof as against Charles, either by his own act or that of his co-defendant." In this connection it is said that an instruction not applicable to the facts proved should be refused, and that the hypothesis assumed should be so broad in its application as to exclude all others, citing Hamilton v. Hunt, 14 Ill. 472.

This objection, if we understand it, rests upon a misapprehension. The instruction assumes no hypothesis, nor does it imply anything as to the effect, or weight, or even the existence of any evidence in the case. It is clear enough that the offense intended by the information was a joint assault, which, in its nature, is an assault by each, at the same time and with a common intent, by one with a club and by the other with a knife, although the language used is "a certain deadly weapon, instrument or other thing, to wit, a club and knife;" and Charles, being the defendant first named, and club, the weapon first specified, the natural construction would be that he was charged with using that weapon and John with using the other. That all this was so understood by the defendants and their counsel is manifest from the quotation above made from the argument here and from the fact that no objection, on account of variance or otherwise, was made to the evidence given of an assault by Charles alone and with a club only. Under the information, as framed, it would have been proper to show an assault by each at the same time, with the weapons

respectively charged, or by either, with the weapon charged
to him, aided and abetted by his co-defendant, in either of
which cases the proper verdict would be "guilty," as to both;
or by either, with the particular weapon charged to him,
without any evidence against his co-defendant, in which case
the proper verdict would be "guilty" as to him, and "not
guilty" as to his co-defendant. If, as to one, there was no evi-
dence, the court might properly, of its own motion or on
that of such defendant, upon the close of the people's case in
chief, direct a separate verdict of acquittal as to him and dis-
charge him. But the court would not be bound to do so of its
own motion. It might submit the whole case, and as to both
defendants, properly presuming that the jury, under a general
instruction requiring proof of guilt beyond a reasonable doubt
in order to convict, and advising them that if the evidence
warranted it they might convict one and acquit the other,
would return the proper verdict. In this case, if John had
been acquitted by a separate verdict before it was finally
submitted, the instruction doubtless would, as it should, have
related to Charles and the charge against him alone. But
there was no such separate verdict. John did not ask it, but
saw fit to submit his case together with that of Charles. Nor
did Charles object to it. Therefore the instruction related to
the whole case and both the defendants, as submitted, with
whatever of fullness or lack of evidence there was about it,
and it was just such as is commonly given for the first of the
series for the prosecution in criminal cases. Its usefulness
may well be doubted, but its harmlessness hardly. For it
amounts to no more than a statement to the jury that the
character of their verdict should depend upon their belief,
from the evidence, as to the material facts alleged in the
information ; that if it satisfies them beyond a reasonable
doubt that these are true as alleged—in other words, that the
defendants are guilty beyond a reasonable doubt—they should
return a verdict of guilty; and the implication, which is about
as clear and strong as the expression, is, that unless it so satis-
fies them, they should return a verdict of not guilty. But it
presents no hypothesis at all in the proper sense of the term;

that is, no particular fact or condition upon proof of which they should or might find in any particular way upon the general question of guilt or any allegation in issue. By another, which should be considered in connection with this, they were advised that "they could find one or both of the defendants guilty, as they might determine from the evidence." We see no reason to apprehend that they were misled or influenced in any way by any supposed assumption or implication in this instruction or misapplied any of the evidence. Nor does their verdict against Charles of " guilty, as charged in the information," import a finding that he used a knife and a club. Their acquittal of John, in view of the evidence preserved, shows the contrary.

A deadly weapon was defined by the court as " one likely to produce bodily injury from the use made of it." Doubtless a more correct definition would have been, a weapon likely to produce death or great bodily harm by the use made of it, but we do not see how this error could have prejudiced the case of the defendant. The term " club " imports a deadly weapon, though in a given case it may not be for several reasons. And so, also, of a " knife." The information alleged it to have been such. Its form, size and character were described to the jury by comparison at least. The one claimed to have been used was produced. One witness positively identified it, and another testified to its similarity, if not to its identity, though this was denied by the defendant. The manner and effect of its use were also shown. According to all the testimony relating to it, except that of the defendant, whose account of the whole transaction and its several parts must have raised a smile in the jury box—it was clearly a deadly weapon, and an accurate definition should not have changed the finding.

The fourth instruction was in the usual and familiar form with reference to what is and what is not a reasonable doubt; but because it concluded with the statement that if the jury were satisfied from the evidence, beyond a reasonable doubt, of the guilt of the defendants, " or either of them," they should return a verdict of guilty, it is claimed that " in its

fair intendment it ignored the separate rights of each," and required the conviction of both if either was found to be guilty. It could hardly be necessary to notice this palpably unreasonable construction, even if the court had not expressly instructed, as it did, that their verdict might be against one and not against both, according to their belief from the evidence.

By the fifth the jury were told that in determining the weight to be given to the testimony of the different witnesses, they " were authorized to consider (among other things stated) their relationship to the parties," if proved; and it is contended that the parties were the people and the defendants, and therefore that the instruction did not apply to George Graham, a brother of the prosecuting witness, who was called on behalf of the people, while it tended to weaken the testimony of some of the witnesses for the defense. There was no evidence showing a special relationship of any witness to the people of the State of Illinois, and we think it sufficiently obvious that by " the parties" the instruction was intended and understood to mean the parties to the alleged assault and not the parties to the record.

Complaint is also made of the refusal of some and the modification of other instructions asked by the defendants. All that we find in the abstract, however, relating to any so asked, is the following: " Rest of instructions for defendants offered, refused, given and modified, all on pages of record from 64 to 79 inclusive, as well as motions and errors preserved on pages 79 to 80."

We might, therefore, under the rule, decline to notice alleged errors in the court's action upon them. Some of those refused are set forth in the argument, but none of those given, whether modified or not. Upon an examination of the record itself we find no substantial support for these exceptions. It may be conceded that those refused, which are copied in the argument, presented in unobjectionable form the law of self-defense and the effect of danger apparently, though not really imminent or threatened, but the substance of all they contained was clearly and fully set forth in others that were given.

Another stated it to be "the duty of the jury to consider the reasonableness or unreasonableness of the contention of the prosecution in this case, and to consider whether it was probable, under ordinary motives of human conduct, that Charles McNary alone would go into what is shown by some of the evidence to have been demonstrated and regarded as Sam Graham and his body-guard, and there voluntarily commenced (commence) a difficulty by assaulting Graham among his friends, or whether, on the contrary, as he contends, he regarded himself in the company of men hostile to him, and only acted "in rightful self-defense against danger, which to him reasonably appeared to be threatened and imminent." Counsel admits "there may be one objectionable feature in it," but without indicating which one it is, unless by assigning its length as the reason for not reproducing it in the argument, still insists "it was fair toward all parties," and therefore we suppose that it ought to have been given. We think it vicious throughout. It presents as matter of law what is only matter of argument. It assumes that defendant was influenced by ordinary motives only; infers therefrom an improbability of the act charged, and then attributes to such supposed antecedent improbability the legal force of evidence or ground of presumption, to continue in operation after evidence produced, of whatever amount or weight, to rebut and overcome it. In every criminal case the law presumes the defendant's innocence, but only until the contrary is proved beyond a reasonable doubt; and if there is any evidence tending to prove it, an instruction to consider the presumption, without the qualification, will be improper. Here the question for the jury to consider was not whether he probably would or would not go, etc., but whether he actually did go, etc., and its determination properly depended, not on the antecedent probability or improbability of the fact, but upon the evidence produced which this instruction would have ignored. While it is generally if not always the case that crimes, which are *mala in se*, are against the weight of right reason—they are scarcely ever committed without reason, and it is by no means unreasonable in any sense to expect their

commission and to believe the fact in any given case upon the testimony of credible witnesses. In this case the defendant had the benefit of proper instruction to the jury as to the presumption of innocence and its legal weight and effect. This covered all that was sensible or proper in the one proposed, and on that point he was entitled to no more.

The court struck out from another instruction asked the concluding statement—that "if any witness is successfully impeached by proof that he made statements about this case, or any part of it, out of court, inconsistent with the truth of his testimony here, the jury may entirely disregard his testimony delivered before them, or give it only such weight as they may think it entitled to." The latter of these alternatives might have been retained, but it was so clearly implied in the preceding part which was given, stating the different ways and means by which the credibility of a witness may be impeached—among which the last mentioned was, by making the proof so specified—that the defendant could not have been prejudiced by its erasure. As expressed in the quotation above it was certainly in bad company. There is a difference between disbelieving a part or even all of the testimony of a witness after fairly considering, weighing and comparing it and "entirely disregarding" it. The one may be justified by his lack of intelligence, attention or memory, but the other only by his wilful falsehood in respect to a material fact.

Some questions put to one of the people's witnesses, to show an unfriendly feeling against the defendant, were excluded, which might have been allowed; but we think they were of little force and that their exclusion could not have affected the result. His feeling was probably as well shown otherwise as it could have been by them, and his testimony as to the assault was fully corroborated in all important particulars by that of the prosecutor, and of two other and unbiased witnesses—being all who were present besides the defendant.

It is said the judgment wrongly imposed upon plaintiff in error all the costs of the proceeding against both defendants, instead of those only which were made in prosecuting him,

and that the court erred in denying his motion to apportion them. The record, however, does not enable us to see that any was made which was not properly made for the prosecution as against him. It will not be so presumed.

Perceiving no material error the judgment will be affirmed.

*Judgment affirmed.*