## Peter Schwarz, Appellee, v. August F. Poehlmann and Charles Peschke, Appellants.

### Gen. No. 17,984.

1. CRIMINAL LAW—*deadly weapon.* A piece of rubber hose about 21 inches long and 1¼ inches in diameter, one end of which is plugged with a piece of wood 3¼ inches long and the other with a similar piece 1¼ inches long, is *per se* a deadly weapon within the meaning of the Criminal Code.

2. FALSE IMPRISONMENT—*instructions.* In an action for false imprisonment, where the evidence tends to show that plaintiff made threats against defendant and was arrested while carrying a deadly weapon, instructions are improper and present immaterial matters where they indicate that verdict should be for plaintiff if the jury believe that he was carrying such weapon to make an attack on tramps and not on defendant.

3. ARREST—*when justified.* Where a village marshal hears that a person has made threats to "get even" with another and finds such a person carrying a deadly weapon, the marshal may arrest such person without waiting for an attack to be made.

Appeal from the Circuit Court of Cook county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed and remanded. Opinion filed March 13, 1913.

TODD & PLUMMER, for appellants; JAMES TODD and WHARTON PLUMMER, of counsel.

WILEY W. MILLS, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

This is a suit brought by the appellee, Schwarz, claiming damages for an alleged false imprisonment. He recovered a judgment for $500, from which this appeal is taken.

Appellant Poehlmann at the time of the occurrence in issue was the president of the village of Morton Grove, Cook county. Peschke was the village marshal. About September 20, 1908, Poehlmann and the appellee, Schwarz, had an altercation, in which Schwarz was worsted. The testimony tends to show that on the evening of September 27th Schwarz, with a friend named Collins, was drinking in a saloon run by Schwarz's brother, and that he there made threats against Poehlmann, indicating an intention to obtain revenge by "getting even" for the injuries he had received at the hands of Poehlmann. The bartender gave Schwarz and Collins each a piece of rubber hose, and they left the saloon together. The piece of hose carried by Schwarz is attached to the record as an exhibit. It is the ordinary rubber hose, about 21 inches long and 1¼ inches in diameter. One end is plugged by a piece of wood 3¼ inches long, and the other by a similar piece of wood 1¼ inches long. The end with

the smaller piece of wood is evidently intended as the handle. It was made some time before this by Schwarz while tending bar for his brother, and he says its purpose was "to protect himself in case of a fight." The threats of Schwarz and the fact that he had armed himself with this weapon were shortly thereafter communicated to Peschke, the marshal, who found Schwarz in another saloon and arrested him and locked him up in jail. Poehlmann was also told of Schwarz's conduct, and told Peschke to place Schwarz under arrest, and was informed that that had already been done. As there must be another trial, we have narrated only the briefest outline of the occurrence.

By the criminal code, division VI, section 4, it is provided that "An arrest may be made by an officer or by a private person without warrant, for a criminal offense committed or attempted in his presence, and by an officer, when a criminal offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it." It follows, therefore, that Peschke or Poehlmann was authorized to arrest Schwarz for committing a criminal offense, if his conduct at the time amounted to such an offense. Paragraph 54-a of division 1 of the criminal code provides that "whoever shall have in his possession * * * any slung-shot or metallic knuckles, or other deadly weapon of like character, or any person in whose possession such weapons shall be found, shall be guilty of a misdemeanor."

Is the weapon, admittedly in Schwarz's possession when he was arrested, a "slung-shot or other deadly weapon of like character?" Webster's dictionary defines a slung-shot as "a small mass of metal or stone fixed on a flexible handle, strap, or the like, used as a weapon." In Cyc., vol. 13, page 283, a deadly weapon is said to be "any weapon likely to produce death; any weapon or instrument by which death may be produced; a weapon dangerous to life, likely to produce bodily injury from the use made of it, likely to pro-

duce death or great bodily harm  *  *  *   a weapon or instrument as is made and designed  *  *  *   for the destruction of life, or the infliction of injury.'' In McNary v. People, 32 Ill. App. 58, a deadly weapon was said to be a weapon likely to produce death or great bodily harm by the use made of it, and it was held that the term ''club'' imports a deadly weapon. In Sleeting v. Supreme Tribe of Ben Hur, 161 Ill. App. 449, it was held that a large bottle was a deadly weapon within the meaning of the law making an assault with a deadly weapon a criminal offense.

We have heretofore described the weapon in Schwarz's possession, and have given it careful inspection and examination, and are convinced that both in popular and legal signification it is *per se* a deadly weapon, and a deadly weapon of like character as a slung-shot, and within the scope of the statute above mentioned. Appellee admits that it is a weapon, and that he was carrying it as a weapon, but for the purpose of an attack on other persons than Poehlmann. The case was tried apparently upon the theory that the sole issue was as to the motive of Schwarz in having this weapon in his possession. The jury was instructed so as to lead it to understand that it should render a verdict for the plaintiff, Schwarz, if it should believe that he was carrying the deadly weapon for the purpose of making an attack on some tramps instead of an attack on Poehlmann. Schwarz's claim was that he was carrying this weapon for the purpose of making an attack on these tramps, but the record discloses neither any reason for or authority in him to do this. It was not necessary for the marshal to wait until the attack had been made before making the arrest.

Holding as we do, that the jury was wrongly instructed, and thereby an immaterial issue presented, and that appellants did not receive a fair trial upon the real issues involved, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*