THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAN LEE, Defendant-Appellant.

Third District    No. 76-328

Opinion filed March 11, 1977.

John Gleason, of Walbau, Hayes & Fleischli, of Springfield, for appellant.

Bruce Black, State's Attorney, of Pekin (James E. Hinterlong and Robert Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Dan Lee appeals from a conviction on two counts of armed violence following a jury trial in the Circuit Court of Tazewell County. The trial court entered judgment of conviction on one of the counts of armed violence and sentenced defendant to a term of imprisonment of not less than 3 nor more than 9 years, to be served concurrently with a sentence previously imposed upon defendant. Defendant was charged in a four-count indictment with the offenses of armed violence and conspiracy, but the conspiracy count of the indictment was dismissed prior to trial.

On appeal in this court, defendant argues (1) that the State failed to prove defendant was armed with a dangerous weapon, (2) that the indictment fails to state a cause of action, (3) that the trial court abused its discretion in denying defendant's motion for severance, and (4) that the sentence imposed by the trial court was in excess of that authorized for the offense of armed violence.

Defendant was specifically charged in the indictment, which alleged that he and his six codefendants committed (in Count I) the offense of armed violence in violation of section 33A—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 33A—2) by committing the offense of aggravated battery in violation of section 12—4(b)(1) of the Criminal Code while armed with dangerous weapons, by beating and striking with bludgeons certain individuals, thereby causing bodily harm to those persons. In Count II of the indictment, the charge was armed violence by committing the offense of aggravated battery in violation of section 12—

4(a) of the Criminal Code while armed with dangerous weapons, bludgeons, by beating and striking a certain individual, thereby causing him great bodily harm. Count III of the indictment charged that defendant committed the offense of armed violence by committing the offense of aggravated battery in violation of section 12—4(a) of the Criminal Code while armed with dangerous weapons, bludgeons, by beating and striking another individual, thereby causing him permanent disfigurement.

It appears from the evidence that all seven defendants were present at a place called Stone Toad in the early evening of December 14, 1974. The bartender at the Stone Toad testified that she observed a metal bar under the shirt of one of the defendants (not Dan Lee) and that all seven defendants left the Stone Toad together about 7 p.m. The Club, a private club, was holding a game feed dinner on the evening of December 14, 1974. Bonnie Heilman, a member of The Club, testified that she attended the dinner that evening, and saw none of the defendants at The Club before she left the premises at about 7 p.m. that evening.

The State presented 12 occurrence witnesses who were present at The Club shortly after 7 p.m. on December 14, 1974, when a fight broke out. These witnesses generally agreed that from 5 to 14 men came through the front door of The Club and started swinging clubs, breaking glass and hitting patrons. Some of the witnesses, however, did not observe the mass entrance and thought, at the time, that a fight had started among persons already in The Club. At least 11 of the witnesses testified that during the fighting they observed someone with a club or cane. The 12th witness, a bartender at The Club, testified that after the fight was over, he found a spud wrench behind the bar. Nine of the occurrence witnesses testified that they saw defendant Dan Lee among the fighting crowd, and four of these witnesses testified that defendant Dan Lee had a cane or a club, while only one witness testified that that witness did not see Dan Lee with a cane or a club. All of these occurrence witnesses testified that they observed someone swinging a club, someone fighting while armed with a club, or someone hitting another person with a weapon or club during the ruckus. Four of the witnesses stated that they saw the defendant Dan Lee strike someone while armed with a club or cane. One other witness testified that he observed Dan Lee hit someone, but that the defendant was not armed at that particular time.

In addition to the 12 occurrence witnesses referred to, 4 of the 5 alleged victims testified at the trial. David Pagliaro testified that he saw one of the defendants, other than Dan Lee, pass him, and was then struck on the top of the head. After being struck on the head, Pagliaro saw nothing, since his eyes were full of blood. Peter Drudi testified that he saw Dan Lee and another defendant running through The Club, each with a cane or club,

and that one of the defendants, other than Dan Lee, hit Drudi over the head. Drudi conceded that he did not mention any weapons on defendant Dan Lee either in his statement to the police or in his grand jury testimony. Rick VonDerHeide claimed his Fifth Amendment privilege against self-incrimination, and the privilege was sustained as to questions concerning events once the fight broke out. Brad VonDerHeide testified that a number of persons entered The Club and that someone hit him on the back, head and across the shoulders. He also stated that he saw Dan Lee at The Club that evening.

Four of the seven defendants, including Dan Lee, testified in their own behalf at the trial. Generally, the testimony of the defendants indicated that, while all had been present at the Stone Toad, the four testifying defendants arrived at The Club either singly or in groups of two. These four defendants all testified that the fighting was either in progress as they entered, or commenced just after they entered. Defendant Dan Lee testified that as he entered The Club he noticed someone holding his brother, also a defendant in this case, and that he went to his brother's aid. Defendant Dan Lee testified that he had no weapons with him while at The Club.

Dan Lee also stated that, shortly after the fighting, he observed a police officer arrest John Lee, one of the codefendants, at a time when the officer had a cane in his hand. Dan Lee testified that he never saw the cane in John Lee's hand. The police officer had, however, testified that he had observed the defendant, John Lee, swinging the cane inside The Club, and had chased John Lee outside where he removed the cane from that defendant. The cane was admitted into evidence over the objection of the defense.

After hearing the evidence, the jury returned verdicts finding four of the defendants, including Dan Lee, guilty on Counts I and II of the indictment, finding one of the defendants guilty on Count I, finding two of the defendants not guilty on all counts, and finding all of the defendants not guilty on Count III. The trial court entered judgment of conviction against the defendant Dan Lee on Count II of the indictment, and sentenced him as we have indicated.

In *People v. Lee* (3d Dist. 1976), 44 Ill. App. 3d 43, 357 N.E.2d 888, we reversed the convictions of John Lee and Patrick Hunt, two defendants in the trial who did not testify at the trial, on the ground that IPI Criminal No. 2.04, relating to defendant's failure to testify, was given to the jury over the objection of those defendants. The instant appeal, however, is brought solely by defendant Dan Lee, who did testify in the trial, and does not directly raise the issue on which the convictions of John Lee and Patrick Hunt were reversed.

■■ As we have noted, an argument is made by defendant on this

appeal to the effect that the State failed to prove beyond a reasonable doubt that defendant was armed with a dangerous weapon, a material allegation of Counts I and II of the indictment. As has been noted in the case of *People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631:

> " '[W]e may not substitute our judgment for that of a jury on questions involving the weight of the evidence or the credibility of the witnesses [citations], and we will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt.' (*People v. Mills*, 40 Ill. 2d 4, 19; *accord, People v. Nicholls*, 44 Ill. 2d 533."

At the trial, five witnesses, including one victim, testified that the defendant had a cane, bat, pipe or club in his hand. In such circumstances, we cannot say that the evidence is so improbable as to raise a reasonable doubt that defendant was armed with some type of cane or club. Defendant himself contends that he struck someone with his fist.

■■ Defendant argues, however, that the object he was shown to possess at The Club, a cane, was not a dangerous weapon. Under section 33A—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 33A—1) it is provided:

> "A person is considered armed with a dangerous weapon * * *, when he carries on or about his person or is otherwise armed with one or more of the following: * * * bludgeon, black-jack, slungshot, sand-club, sand-bag, metal knuckles, dagger, dirk, billy, * * * or any other deadly or dangerous weapon or instrument of like character."

The only allegedly dangerous weapon which was introduced into evidence was a walking cane, which according to the testimony of a police officer was taken from John Lee. The defendant here devotes much argument toward the proposition that the walking cane cannot be classified as a dangerous weapon. In *People v. Carter* (1951), 410 Ill. 462, 102 N.E.2d 312, the supreme court of this State, in considering the sufficiency of the evidence to charge an assault with a deadly weapon with intent to commit murder, stated (410 Ill. 462, 465):

> "A deadly weapon is not necessarily one manufactured for the special purpose of taking animal life, nor need it be of any certain size or description. This court has defined a deadly weapon as 'an instrument that is used or may be used for the purpose of offense or defense and capable of producing death. Some weapons are deadly *per se*, others, owing to the manner in which they are used, become deadly. A gun, pistol or dirkknife is itself deadly, while a *small pocket knife* [emphasis added in *Carter*], a *cane* [emphasis added now], a riding whip, a club, or baseball bat may be so used

as to be a deadly weapon.' (*People v. Dwyer*, 324 Ill. 363, 364.) Those instrumentalities not considered deadly *per se* may thus clearly become such by the manner in which they are used. *Acers v. United States*, 164 U.S. 388; *McNary v. People*, 32 Ill. App. 58; *Schwarz v. Poehlmann*, 178 Ill. App. 235."

These observations we conclude, apply to section 33A—1 of the Criminal Code under consideration and that the instrumentality which the defendant was shown to possess, even if not *per se* dangerous, was transformed by defendant's usage into a dangerous weapon within the meaning of section 33A—1 of the Criminal Code, on the basis of the evidence presented by the prosecution, and so found by the jury.

■■■ The next contention made by defendant is that neither Count I nor Count II of the indictment states a cause of action for armed violence, because no allegation of the commission of aggravated battery is made in those counts. The substance of defendant's argument on this point is directed to the proof at trial, rather than to the adequacy of the indictment. To the extent that this argument concerns the proof at the trial, our determination heretofore outlined dispels that argument. It appears, further, that the defendant did not attack the indictment in the trial court on the ground now stated on appeal, and that he did not file a motion in arrest of judgment. As the Illinois Supreme Court stated in *People v. Gilmore* (1976), 63 Ill. 2d 23, 29, 344 N.E.2d 456:

"While we do not approve, and indeed find it difficult to understand, failure to strictly comply with the explicitly stated requirements of section 111—3(a) of the Code of Criminal Procedure, the sufficiency of an information or indictment attacked for the first time on appeal is not to be determined by whether its form follows precisely the provisions of the statute. When attacked for the first time on appeal an information or indictment is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. *People v. Grant*, 57 Ill. 2d 264, *People v. Harvey*, 53 Ill. 2d 585."

Count I of the indictment in the instant case, charged that the defendant, while armed with a dangerous weapon, a bludgeon, violated section 12—4(b)(1) of the Criminal Code by striking with the bludgeon certain of the victims, thereby causing bodily harm to the victims. Count II of the indictment charged that the defendants, while armed with bludgeons, violated section 12—4(a) of the Criminal Code by beating and striking a person, and thereby causing him great bodily harm. We do not find any deficiency in the indictment, and at the very least, we are unable to say

that the indictment was so insufficient as to hamper the defendant in preparation of his defense or so as to preclude defendant from pleading a resulting conviction as a bar to future prosecution arising out of the same conduct.

■■ It is also argued that the trial court abused its discretion in denying defendant's motion for severance of trial. The Illinois Supreme Court stated in *People v. Canaday* (1971), 49 Ill. 2d 416, 424, 275 N.E.2d 356:

"It is clear from decisions of this court that if one or more defendants are jointly indicted they are to be tried together, unless the trial court in the exercise of sound discretion considers that separate trials should be granted. (*People v. Gendron*, 41 Ill. 2d 351, 356; *People v. Ross*, 41 Ill. 2d 445, 461, cases cited.) For the trial court in weighing a motion for separate trials 'The paramount inquiry is whether the defenses are of such an antagonistic nature that a severance is imperative to insure a fair trial. [Citations.]' (*People v. Gendron*, 41 Ill. 2d at 356-357.)"

The supreme court also held in *People v. Yonder* (1969), 44 Ill. 2d 376, 386, 256 N.E.2d 321, *cert. denied*, 397 U.S. 975, 25 L. Ed. 2d 270, 90 S. Ct. 1094, that:

"In reviewing the trial court's decision on this issue, we will look only to the petitions filed by the defendants and the matters alleged therein, and not to the subsequent happenings at trial."

In the instant case, defendant made a motion for severance "just prior to the opening of the trial," and the precise allegations of that motion are not made clear to this court. Nevertheless, even in the arguments made to this court regarding actual happenings at trial, which we clearly need not consider in ruling on this issue, defendant has not established that the defenses of the defendants were so antagonistic as to require a severance. It appears that codefendant Jack Barnum testified that he saw defendant Dan Lee wrestling with Mike Ruppel and that this was the only fight he saw in The Club. Dan Lee testified that, as he entered The Club, he observed two people holding and hitting John Lee, his brother and a codefendant, and that when he proceeded to go to his brother's aid, that Mike Ruppel jumped on Dan Lee's back, and that Allan and Jack Barnum then pulled Ruppel off Dan Lee. There was no other testimony which would operate to support the contention made by defendant. We, therefore, conclude that the trial court did not abuse its discretion in denying defendant's motion for severance.

■■ The final argument is made by defendant to the effect that the trial court erroneously sentenced him for the commission of a Class 3 felony, rather than for a Class 4 felony. We note that section 33A—3 of the Criminal Code provides in part:

"Violation of Section 33A—2 is a Class 4 felony *or the maximum sentence provided for the same act while unarmed, whichever is greater.*" (Emphasis added.)

The conviction for which the defendant was sentenced rests upon the inflicting of great bodily harm, in committing a battery, in violation of section 12—4(a) of the Criminal Code, while the defendant was armed with a dangerous weapon. Commission of aggravated battery, in violation of section 12—4(a), is a Class 3 felony. The infliction of great bodily harm would still have been a violation of section 12—4(a) had the defendant not been armed with a dangerous weapon since he was found guilty of violation of section 12—4(a) of the Criminal Code. The specific language of section 33A—3 of the Criminal Code expressly authorizes "the maximum sentence provided by the same act, while unarmed," and obviously refers to section 12—4(a) and permits sentencing on the basis of the penalty imposed under a Class 3 felony classification as specifically sanctioned in section 33A—3 of the Criminal Code, permitting the greater sentence to be imposed, as an alternative to sentencing as a Class 4 felony.

We, therefore, conclude that the sentence as imposed of 3 to 9 years is within the range of permitted sentences on the basis of the nature of the conviction in the instant case. For the reasons stated, the judgment of the Circuit Court of Tazewell County is affirmed.

Affirmed.

STENGEL, P. J., and SCOTT, J., concur.