THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DONALD GLENN SAMIER, Defendant-Appellant.

Third District   No. 3—84—0013

Opinion filed January 11, 1985.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, and
Charles M. Schiedel and Carroll J. King, both of State Appellate Defender's
Office, of Springfield, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Peter M. Tumminaro, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

On July 27, 1983, defendant Donald Samier was convicted of one count of kidnaping, one count of aggravated kidnaping and one count of unlawful restraint. On December 22, 1983, defendant was sentenced to a term of 15 years.

The incident which gave rise to defendant's arrest occurred on March 25, when Anne Clegg left her high school math class at 9:15 and walked across the school parking lot in order to reach her locker. A man in a green Torino pulled up beside her and asked if she wanted a ride. Anne declined. Defendant then reached through the window on the passenger side of the car and grabbed her arm. Anne testified that he had a knife in the other hand and that he threatened to cut her throat if she did not get into his car. He then pulled her into the car and they drove across the Iowa/Illinois bridge. After stopping at a gas station, where Anne attempted to get out of the car and defendant again brandished the knife, the defendant stopped behind a dumpster in the parking lot of an apartment complex. There a struggle ensued and Anne managed to get out of the car and run into an apartment building, where she sought help.

The defendant raises the following issues on appeal: (1) whether the trial court erred in refusing to allow defense counsel to cross-examine Anne Clegg as to whether she had a history of running away; (2) whether the knife used by defendant and introduced into evidence by the State failed to satisfy the aggravated kidnaping statute; (3) whether the defendant's multiple convictions arose from the same act requiring vacation of the convictions for kidnaping and unlawful restraint and resentencing; (4) whether defendant was deprived of a fair trial because the venire contained a disproportionately high number of women.

■ As to the defendant's first allegation of error, the defendant argues that the question of whether Anne Clegg had a history of running away from school was the linchpin of his defense, because it would have tended to show that Anne voluntarily entered defendant's car. The State argues that defendant waived any error by failing to make an offer of proof and, therefore, not properly preserving this issue for appeal. Offers of proof are required for preserving error on appeal unless "a question shows the purpose and materiality of the evidence, and if it is in proper form and clearly admits of an answer

relative to the issues." (*People v. Moretti* (1955), 6 Ill. 2d 494, 520-21, 129 N.E.2d 709.) Here, the question as to whether the victim was in the habit of running away does not clearly admit an answer relative to the issues, which is evidenced by the fact that the trial judge did not consider the elicited testimony to be relevant. Therefore, the defendant should have made an offer of proof as to the relevance of Anne Clegg's testimony and what her answer would have been if she had been allowed to answer. It is too late for the defense to explain the relevance of this testimony on appeal. Furthermore, defendant failed to assert this as error in his post-trial motion.

■■ Defendant's second contention is that the blade of the knife introduced into evidence was not long enough to satisfy the three-inch length required by the kidnaping statute to prove the kidnaper was "armed with a deadly weapon" as described in section 33A—1. Section 10—2(a) of the Criminal Code of 1961 defines aggravated kidnaping as

> "(a) A kidnaper within the definition of paragraph (a) of Section 10—1 is guilty of the offense of aggravated kidnaping when he: *** (5) Commits the offense of kidnaping while armed with a dangerous weapon, as defined in Section 33A—1 of the 'Criminal Code of 1961.' " (Ill. Rev. Stat. 1983, ch. 38, par. 10—2(a).)

Section 33A—1 of the Criminal Code of 1961:

> "A person is considered armed with a dangerous weapon for purposes of this Article, when he carries on or about his person or is otherwise armed with a category I or category II weapon. (b) A category I weapon is a pistol, revolver, rifle, shotgun, spring gun or any other firearm, sawed-off shotgun, a stun gun or taser ***, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto or any other deadly or dangerous weapon or instrument of like character." (Ill. Rev. Stat. 1983, ch. 38, par. 33A—1.)

The defendant argues that the blade of the knife allegedly used by him had to have been at least three inches in length in order for his conviction for aggravated kidnaping to stand, because the statutory elements of aggravated kidnaping require that defendant be armed with a deadly weapon as described in section 33A—1. Section 33A—1 describes armed with a deadly weapon as a knife with at least a three-inch blade. Beyond argument, the knife found in defendant's car and introduced into evidence by the State did not have a blade of at least three inches. However, the statute goes on to state that a category I weapon can be "any other deadly or dangerous weapon or instrument of like character."

In *People v. Lee* (1977), 46 Ill. App. 3d 343, 360 N.E.2d 1173, this court considered a similar argument. In *Lee*, the weapon possessed by the defendant was a walking cane. In *Lee*, this court stated:

" 'A deadly weapon is not necessarily one manufactured for the special purpose of taking animal life, nor need it be of any certain size or description. This court has defined a deadly weapon as "an instrument that is used or may be used for the purpose of offense or defense and capable of producing death. Some weapons are deadly *per se*, others, owing to the manner in which they are used, become deadly. A gun, pistol or dirkknife is itself deadly, while a *small pocket knife* [emphasis added in *People v. Carter* (1951), 410 Ill. 462, 102 N.E.2d 312], a *cane* [emphasis added in *Lee*], a riding whip, \*\*\* may be so used as to be a deadly weapon." \*\*\*' " (*People v. Lee* (1977), 46 Ill. App. 3d 343, 347-48, 360 N.E.2d 1173, citing *People v. Dwyer* (1927), 324 Ill. 363, 155 N.E.2d 316.)

This court went on to state that these observations apply to section 33A—1 of the Criminal Code of 1961. (46 Ill. App. 3d 343, 348, 360 N.E.2d 1173, 1177.) Therefore, we find that because the defendant allegedly used the knife for the purpose of threatening the life of Anne Clegg on two occasions, one when he forced her into his car, and second when he forced her to stay in his car at the gasoline station, and because the knife could have been deadly if used in the manner threatened, the knife possessed by defendant, although the blade was not at least three inches in length, was a deadly weapon under the reasoning of *Lee* and of this court in *People v. Hill* (1977), 47 Ill. App. 3d 976, 362 N.E.2d 470.

■ The third issue raised by the defense is that the multiple offenses of which defendant was convicted were based upon the same physical act and, therefore, the convictions for kidnaping and unlawful restraint must be set aside. The State concedes that all three offenses involved the same physical act but asks that we not remand for resentencing because the trial judge did not consider all three convictions when sentencing the defendant, only the conviction for aggravated kidnaping. However, the record does not support the State's contention. The sentencing order sets out all three offenses, and we will, therefore, remand to the circuit court of Rock Island County for resentencing.

■ We have not forgotten defendant's final allegation of error, that the disproportionately large number of women in the venire prejudiced the defendant and failed to meet the sixth amendment's cross-section requirement of *Taylor v. Louisiana* (1975), 419 U.S. 522, 42

L. Ed. 2d 690, 95 S. Ct. 692. *Taylor v. Louisiana* dealt with the opposite situation as the case at bar. In *Taylor*, the United States Supreme Court considered a situation where women in Louisiana were exempted from jury duty unless they sent in a form which indicated that they would voluntarily serve. This resulted in a disproportionately small number of women on juries. The Supreme Court found that this situation violated the fair cross-section requirement, stating that "the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community ***." (419 U.S. 522, 528, 42 L. Ed. 2d 690, 703, 95 S. Ct. 692, 702.) Far from the situation in *Taylor*, here the defendant makes no showing that males were systematically excluded from the venire. As the Supreme Court stated in *Taylor*, "we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." (419 U.S. 522, 538, 42 L. Ed. 2d 690, 703, 95 S. Ct. 692, 702.) We, therefore, affirm the conviction for aggravated kidnaping and vacate the convictions for kidnaping and unlawful restraint and remand for resentencing.

Affirmed and remanded with instructions.

HEIPLE and BARRY, JJ., concur.