674 N.E.2d 919 (1996)
285 Ill. App.3d 838
221 Ill.Dec. 126
In re T.G., a Minor. (The People of the State of Illinois, Petitioner-Appellee,
v.
T.G., a Minor, Respondent-Appellant).
No. 1-94-2331.
Appellate Court of Illinois, First District, Fourth Division.
December 19, 1996.
*922 Coffield, Ungaretti & Harris by Daniel P. Albers, Chicago, for respondent-appellant.
Jack O'Malley, Chicago (Renee Goldfarb, Julie Line Bailey, Lindsey Levin, of counsel), for petitioner-appellee.
Justice CERDA delivered the opinion of the court:
Respondent minor, T.G., was adjudged a delinquent based on attempted first-degree murder (720 ILCS 5/8-4, 9-1 (West 1992)), aggravated battery causing great bodily injury (720 ILCS 5/12-4 (West 1992)), and aggravated battery using a deadly weapon (720 ILCS 5/12-4(b)(1) (West 1992)), but was found not guilty of armed violence (720 ILCS 5/33A-2 (West 1992)). In the dispositional order, he was sentenced to five years' probation, based on the attempted first-degree murder, with the condition that he successfully complete an outreach program at the High Plains Youth Center in Brush, Colorado.
On appeal, T.G. asserts that (1) there was insufficient evidence of a specific intent to kill; (2) there was no evidence of great bodily harm; and (3) the trial court's directed verdict on the armed violence charge collaterally estopped any conviction for aggravated battery based on using a deadly weapon. We affirm in part, reverse in part, and remand for sentencing.
On September 3, 1993, at 1 p.m., Jackie Climek had a party at her home at 6343 North Broadway in Chicago. Because Climek testified that she had drunk eight ounces of straight Scotch Whiskey within 30 minutes, the trial court considered her testimony in the light that she was drunk at the time of the incident.
Climek testified that Kevin Kane and T.G. arrived shortly after the party started. She had known both Kane and T.G. for about a year. She told T.G. that she did not want him in her house, but he ignored her, walking past her into the bedroom where the party was in progress. Climek repeatedly told T.G. to leave, but he refused. After they argued in the kitchen, Climek telephoned her friend, Justin Long, to come and get T.G. out of her house because T.G. had hit her in the face.
Even though Climek told T.G. that Long was coming, he stayed. Ten minutes later, while Climek was waiting outside, Long arrived with Brian McCairall, whom Climek did not know. Long and McCairall went through the front door, which leads to a stairway of seven steps and another door at the top of the stairs. T.G. was sitting at the top of the stairway and Kane was nearby. Long walked up the stairs toward T.G. and asked him to leave. Climek did not see the fight, but did see Kane's hands on McCairall. McCairall tumbled down the stairs, closing the front door as he fell and locking Climek out of her house.
When T.G. opened the front door a short time later, he was holding a bloody steak knife from Climek's kitchen. T.G. giggled and said something Climek did not understand. Inside, Climek saw that McCairall had been stabbed in the upper chest and in his side and that Long had a small cut on his leg. Climek did not see either McCairall or Long with a weapon.
Michelle Henriquez, a friend of Climek's, testified that she was at Climek's house during the party. The trial court found her to be very believable. She witnessed an argument between T.G. and Climek, after which Climek announced that she was going to call Long. Following the call, Henriquez saw T.G. with a little kitchen knife in the bedroom. He stuffed it up his right sleeve five minutes before the fight started. After Long and McCairall arrived, Henriquez saw two punches between Long and T.G. before she left to use the telephone.
Brian McCairall testified that he and Long went to Climek's house after she had paged Long saying that she was being beaten. When they arrived, Climek met them outside. McCairall followed Long into the house, where he saw T.G. and Kane on the stairway. He had known Kane for five years and T.G. for a few months. T.G. began *923 telling his side of the story as Long walked up the stairs past T.G., making eye contact with him. A fight broke out between Long and T.G., but McCairall did not know who threw the first punch.
As soon as the fight started, McCairall grabbed T.G. and put him against the wall. Kane jumped on McCairall's back, grabbing him around the neck from behind, as T.G. stood in front of him. McCairall lost his balance and fell backwards as he felt a poke in his chest. T.G. then swung a knife at Long and McCairall, who was stabbed two more times. At first, McCairall did not realize he had been stabbed. He went to the bathroom because he felt a little pain, as if he had been poked by a pen or pencil. There, he saw that his shirt was cut so he took it off, revealing three bloody wounds.
Justin Long, whose testimony the trial court did not find credible, testified that he knew Kane and T.G. When he and McCairall arrived at Climek's house, he went up the stairs and asked T.G. to leave. T.G. refused and took a swing at him, so he blocked the punches and fought back. After McCairall pulled T.G. off Long, Kane grabbed McCairall and put him in a head lock as T.G. lunged at McCairall with his right arm. When McCairall freed himself and ran into the house, Long noticed that T.G. had a knife. Long kicked at T.G. in an effort to keep him away, but T.G. stabbed Long in the ankle, causing a small cut, before he ran away.
The trial court granted T.G.'s motion for a directed finding on all the charges relating to Long and on the armed violence charge relating to McCairall based on there being no evidence that the knife's blade was at least three inches long. However, the court denied the motion for a directed finding on the attempted first-degree murder charge relating to McCairall because it found that T.G.'s actions in arming himself with a knife when he knew there would be a confrontation and lunging at McCairall with that knife were sufficient to show the specific intent to kill McCairall.
T.G., whom the trial court found to be incredible, testified that Climek let him and Kane into the party with no problem. Once inside, he sat on the bed watching the others. Climek and another young woman started to scratch and taunt him, calling him a "wannabe." T.G. described Climek as belligerent, wobbly, and smelling of alcohol. The confrontation escalated until T.G. slapped Climek in the face.
According to T.G., he did not know that Climek had called anyone to get him out of the house before he heard the banging on the front door. Climek ran from the bedroom to the front door and started telling McCairall and Long her side of the story. Because McCairall and Long were very hostile and anxious when they entered the house, T.G. was afraid they would try to hurt him. Looking for something to protect himself, he found the knife, then went directly to the stairway without going into the bedroom.
T.G. further testified that he began telling McCairall his side of the story seconds before Long punched him in the jaw and McCairall swung a crowbar at his head. After Long punched him a few more times, T.G. started to slash with the knife in an effort to defend himself, then ran out of the house, dropping the knife. He claimed that no one ever told him to leave.
The trial court found T.G. guilty of attempted first-degree murder, aggravated battery based on knowingly causing great bodily harm, and aggravated battery based on the use of a deadly weapon. The trial court ruled that T.G. stabbed McCairall with the intent to kill him and was not using self-defense.
At the dispositional hearing, the trial court committed T.G. to the Illinois Department of Corrections based on the attempted first-degree murder. Subsequently, the court denied T.G.'s motion for reconsideration of the verdict, but vacated the commitment order and sentenced T.G. to five years' probation with the condition that he successfully complete a residential outreach program at the High Plains Youth Center in Brush, Colorado.
T.G.'s first assertion is that there was insufficient evidence of a specific intent to kill McCairall to support his conviction for *924 attempted first-degree murder. T.G. is mistaken when he argues that the nature and extent of McCairall's injuries are essential elements that must be proven beyond a reasonable doubt in all cases. For a conviction of attempted murder, the State must prove beyond a reasonable doubt that the defendant, with the specific intent to commit murder, did any act that constituted a substantial step toward the commission of murder. People v. Allen, 153 Ill.2d 145, 154, 180 Ill.Dec. 72, 606 N.E.2d 1149 (1992); People v. Homes, 274 Ill.App.3d 612, 622, 211 Ill.Dec. 200, 654 N.E.2d 662 (1995). Intent to kill may be inferred from the character of the defendant's acts and the circumstances surrounding the commission of the offense (People v. Terrell, 132 Ill.2d 178, 204, 138 Ill.Dec. 176, 547 N.E.2d 145 (1989)), including the character of the assault, the nature and seriousness of the injury (People v. Williams, 165 Ill.2d 51, 64, 208 Ill.Dec. 341, 649 N.E.2d 397 (1995)), and the use of a deadly weapon (People v. Strickland, 254 Ill.App.3d 798, 808, 194 Ill.Dec. 102, 627 N.E.2d 218 (1993)). The necessary mental state may also be inferred from evidence that the defendant voluntarily and willfully committed an act whose natural tendency was to destroy another's life. People v. Carter, 410 Ill. 462, 466, 102 N.E.2d 312 (1951); People v. Bailey, 265 Ill.App.3d 262, 273, 202 Ill.Dec. 546, 638 N.E.2d 192 (1994). A finding of the intent to kill is a question of fact that will not be reversed unless there is a reasonable doubt as to the defendant's guilt. Bailey, 265 Ill.App.3d at 273, 202 Ill.Dec. 546, 638 N.E.2d 192; People v. Mitchell, 116 Ill.App.3d 44, 48, 71 Ill.Dec. 780, 451 N.E.2d 934 (1983).
None of the cases cited by either T.G. or the State are helpful because they are all factually distinguishable. The only similar case is People v. Carter, 410 Ill. 462, 102 N.E.2d 312 which involved a prosecution for assault with the intent to commit murder. Several witnesses testified that they saw a knife in the hand of the defendant, who admitted cutting the victim over the left eye with a small pocketknife. Carter, 410 Ill. at 465, 102 N.E.2d 312. The trial court found specific intent to kill from the reckless character and manner of the defendant's acts, not from the nature and seriousness of the injury. Carter, 410 Ill. at 467, 102 N.E.2d 312.
Considering the evidence in this case in the light most favorable to the prosecution, as we must (Williams, 165 Ill.2d at 54-55, 208 Ill.Dec. 341, 649 N.E.2d 397), it showed that T.G. armed himself with the knife, hid it in his sleeve, and waited on the stairs for Long to arrive. During the fight that ensued, Kane held McCairall from behind while T.G. lunged at McCairall, stabbing him in the chest. He then stabbed McCairall two more times while slashing at him with the knife. T.G.'s specific intent to kill McCairall was reasonably inferred from his voluntary and willful act of lunging at McCairall with the knife and stabbing him in the chest, the natural tendency of which was to destroy McCairall's life. Given that evidence, a rational trier of fact could have found the specific intent to kill beyond a reasonable doubt. Williams, 165 Ill.2d at 54-55, 208 Ill.Dec. 341, 649 N.E.2d 397; People v. Collins, 106 Ill.2d 237, 261, 87 Ill.Dec. 910, 478 N.E.2d 267 (1985).
T.G. also contends that the trial court improperly found a specific intent to kill because it found that the knife was not dangerous or deadly under the armed violence statute. T.G.'s argument fails in part because the trial court did not find that the kitchen knife T.G. used in stabbing McCairall was generally not a dangerous or deadly weapon. Instead, the court specifically found that the knife was not a dangerous weapon under the armed violence statute because there was no evidence that its blade was at least three inches long. It did not address whether the knife was a dangerous weapon regardless of its length.
The armed violence statute provides:
"A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." 720 ILCS 5/33A-2 (West 1992).
Definitions of armed violence under Section 33A-1 of the Criminal Code of 1961 (West 1992) 720 ILCS 5/33A-1 are, in pertinent part:
(a) Armed with a dangerous weapon. A person is considered armed with a dangerous *925 weapon for purposes of this Article, when he or she carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon.
(b) * * * A Category II weapon is any other rifle, shotgun, spring gun, other firearm, stun gun or taser * * *, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, axe, hatchet, or other deadly or dangerous weapon or instrument of like character." 720 ILCS 5/33A-1 (West 1992).
Given the statute's definitions, the trial court should not have limited its finding to whether there was evidence of the length of the knife's blade, but should have also considered whether the knife was a deadly weapon on the basis that it was a "deadly or dangerous weapon or instrument of like character." A knife with a blade that is not at least three inches long can be a deadly weapon under section 33A-1 of the Criminal Code. People v. Samier, 129 Ill.App.3d 966, 968-69, 85 Ill.Dec. 233, 473 N.E.2d 601 (1985). In Samier, 129 Ill.App.3d at 968, 85 Ill.Dec. 233, 473 N.E.2d 601, the blade of the knife the defendant used in the kidnapping was less than three inches long. Nevertheless, his conviction for aggravated kidnapping, which used section 33A-1 of the Criminal Code to define a deadly weapon, was affirmed. Samier, 129 Ill.App.3d at 969, 85 Ill.Dec. 233, 473 N.E.2d 601.
For that reason, we limit the trial court's finding to that part of the statute that relates to the length of the knife's blade and hold that it does not affect whether the knife was generally a deadly weapon. Thus, the court's finding is not dispositive of whether there was a specific intent to kill, for which the use of a deadly weapon is only one of several factors the trier of fact must consider. Terrell, 132 Ill.2d at 204, 138 Ill.Dec. 176, 547 N.E.2d 145. A deadly weapon is not necessarily one manufactured for the special purpose of taking a life nor need it be of any particular size or description. Carter, 410 Ill. at 465, 102 N.E.2d 312. It is an instrument that is used or may be used for the purpose of an offense and is capable of producing death. Carter, 410 Ill. at 465, 102 N.E.2d 312; People v. Fort, 119 Ill.App.2d 350, 354, 256 N.E.2d 63 (1970).
The trial court's directed finding on the armed violence charge was based on the State's failure to prove that the knife was a deadly weapon under the armed violence statute only because there was no evidence of the length of the knife's blade. That finding had no bearing on the attempted first-degree murder conviction. Therefore, we affirm the attempted first-degree murder conviction.
T.G. next asserts that his convictions for aggravated battery must be reversed. Before considering the merits of his arguments, we must determine if this court has jurisdiction over the appeal of the two aggravated battery convictions. Generally, absent the imposition of a sentence, a judgment of guilty in a criminal case cannot be appealed because it is not a final judgment. People v. Dixon, 91 Ill.2d 346, 352, 63 Ill.Dec. 442, 438 N.E.2d 180 (1982); People v. Burrage, 269 Ill.App.3d 67, 71-72, 206 Ill.Dec. 450, 645 N.E.2d 455 (1994). Also see People v. Flores, 128 Ill.2d 66, 95, 131 Ill.Dec. 106, 538 N.E.2d 481 (1989) and People v. Caballero, 102 Ill.2d 23, 51, 79 Ill.Dec. 625, 464 N.E.2d 223 (1984). In proceedings under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 (West 1992)), the dispositional order is the final judgment. In re J.N., 91 Ill.2d 122, 127, 61 Ill.Dec. 776, 435 N.E.2d 473 (1982).
However, we believe that there is an exception to this rule. People v. Scott, 69 Ill.2d 85, 88, 12 Ill.Dec. 736, 370 N.E.2d 540 (1977); People v. Frantz, 150 Ill.App.3d 296, 300, 103 Ill.Dec. 649, 501 N.E.2d 966 (1986).
When a case is properly on appeal from a final judgment on another offense, the reviewing court may also review the appealed conviction of an offense for which no sentence was imposed. Scott, 69 Ill.2d at 88, 12 Ill.Dec. 736, 370 N.E.2d 540; Burrage, 269 Ill.App.3d at 72, 206 Ill.Dec. 450, 645 N.E.2d 455. In addition, Supreme Court Rule 615(b) specifically authorizes the reviewing court to "set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken." 134 Ill.2d R. 615(b).
In this case, the dispositional order included only the attempted first-degree murder for which respondent received a sentence of probation. Nevertheless, because *926 the attempted first degree murder conviction is properly before this court on appeal, we believe we may also review the aggravated battery convictions for which no sentences were imposed. Dixon, 91 Ill.2d at 353-54, 63 Ill.Dec. 442, 438 N.E.2d 180; Scott, 69 Ill.2d at 88, 12 Ill.Dec. 736, 370 N.E.2d 540; Frantz, 150 Ill.App.3d at 300, 103 Ill.Dec. 649, 501 N.E.2d 966; 134 Ill.2d R. 615(b).
On the merits, we consider T.G.'s assertion that there was no evidence of aggravated battery causing great bodily harm. Infliction of great bodily harm is an essential element of aggravated battery. People v. Figures, 216 Ill.App.3d 398, 401, 160 Ill.Dec. 135, 576 N.E.2d 1089 (1991); 720 ILCS 5/12-4(a) (West 1992). Simple battery requires physical pain or damage to the body, such as lacerations, bruises or abrasions, either temporary or permanent. People v. Mays, 91 Ill.2d 251, 256, 62 Ill.Dec. 945, 437 N.E.2d 633 (1982); Figures, 216 Ill.App.3d at 401, 160 Ill.Dec. 135, 576 N.E.2d 1089. Aggravated battery requires a more serious injury and is determined by the actual injuries received. Figures, 216 Ill.App.3d at 401, 160 Ill.Dec. 135, 576 N.E.2d 1089.
McCairall received three stab wounds in his chest. He felt the first stab, which he described as "like being poked with a pen or pencil," but there was no evidence that he felt the other two. McCairall testified that he did not realize that he had been stabbed until after he noticed his shirt was cut. When he opened his shirt, he saw three bloody wounds. There was no other evidence of the extent or nature of his injuries. Therefore, we find that great bodily harm was not proven beyond a reasonable doubt and we reverse the conviction for aggravated battery based on great bodily harm.
Finally, T.G. asserts that the trial court's directed verdict on the armed violence charge collaterally estopped any conviction for aggravated battery using a deadly weapon because the two verdicts were legally inconsistent. We disagree.
Under the armed violence statute, a knife can be a deadly weapon either if its blade is at least three inches long or if it is an "instrument of like character" as to the other weapons listed in section 33A-1 of the Criminal Code. 720 ILCS 5/33A-1 (West 1992). In People v. Samier, 129 Ill.App.3d at 968, 85 Ill.Dec. 233, 473 N.E.2d 601, the blade of the knife the defendant used in the kidnapping was less than three inches long. Nevertheless, his conviction for aggravated kidnapping, which used section 33A-1 of the Criminal Code to define a deadly weapon, was affirmed. Samier, 129 Ill.App.3d at 969, 85 Ill.Dec. 233, 473 N.E.2d 601.
In this case, defendant incorrectly asserts that the trial court found as a matter of law that he did not use a deadly weapon. The trial court specifically found that the knife was not a deadly weapon under the armed violence statute because there was no evidence of the length of its blade. The court did not consider the part of the armed violence statute that provides that a knife can be a deadly weapon regardless of its length. While the trial court's failure to consider the statute's entire definition was erroneous, double jeopardy prevents us from remanding this case for proper consideration of whether the knife was a deadly weapon under all sections of the armed violence statute. Instead, we will consider whether the trial court's specific finding collaterally estopped defendant's conviction for aggravated battery using a deadly weapon.
Collateral estoppel means that when an issue of ultimate fact has been previously determined by a valid and final judgment, that issue cannot be relitigated between the same parties. Ashe v. Swenson, 397 U.S. 436, 443, 25 L.Ed.2d 469, 475, 90 S.Ct. 1189, 1194 (1970). The party asserting the doctrine of collateral estoppel bears the heavy burden of demonstrating, clearly and certainly, what the prior judgment determined, including whether the issue previously adjudicated was identical to the question presented in the subsequent action. People v. Zegiel, 179 Ill.App.3d 649, 651, 128 Ill.Dec. 482, 534 N.E.2d 664 (1989). Because collateral estoppel is to be applied with realism and rationality (Ashe, 397 U.S. at 444, 25 L.Ed.2d at 475-76, 90 S.Ct. at 1194), this court has a duty to study the record to ascertain whether the trier of fact could have based its decision on a matter other than that which the defendant is attempting to preclude in the subsequent action. Zegiel, 179 Ill.App.3d at 651, 128 Ill.Dec. 482, 534 N.E.2d 664.
*927 The conviction for aggravated battery using a deadly weapon conviction did not require a finding on the length of the knife's blade. Because the aggravated battery statute does not expressly define the term "deadly weapon," whether a weapon is deadly depends on the facts and circumstances of each case. People v. Turner, 77 Ill.App.3d 985, 987, 33 Ill.Dec. 692, 397 N.E.2d 25 (1979). It is an instrument that is used or may by used for the purpose of an offense and capable of producing death. Carter, 410 Ill. at 465, 102 N.E.2d 312; Fort, 119 Ill.App.2d at 354, 256 N.E.2d 63. A weapon not listed in the armed violence statute, including a knife with a blade less than three inches in length, can become a dangerous weapon when it is used in a manner dangerous to the well-being of the individual threatened. People v. Charles, 217 Ill. App.3d 509, 512, 160 Ill.Dec. 404, 577 N.E.2d 534 (1991).
The trial court decided, under the armed violence count, a different deadly-weapon issue than was involved in the conviction for the aggravated battery using a deadly weapon. Thus, the directed finding on the armed violence count cannot be used to collaterally estop T.G.'s conviction for aggravated battery based on using a deadly weapon. For that reason, we affirm the conviction for aggravated battery based on using a deadly weapon.
Since T.G.'s convictions for attempted murder and aggravated battery based on using a deadly weapon have been affirmed, T.G. argues that the aggravated battery conviction must be vacated because it was based on the same physical act as the attempted first degree murder. We disagree.
T.G. stabbed McCairall three times. He lunged at McCairall's chest with the knife, stabbing him once. Then, he slashed at McCairall, stabbing him two more times. Although closely related, those were three different acts. The first act of lunging at McCairall and stabbing him in the chest supports the attempted first-degree murder conviction, whereas the other two stabbings support the conviction for aggravated battery based on using a deadly weapon.
Because we are affirming the conviction for aggravated battery conviction based on using a deadly weapon, this cause is remanded for the imposition of a sentence on that conviction. Dixon, 91 Ill.2d at 353-54, 63 Ill.Dec. 442, 438 N.E.2d 180; Scott, 69 Ill.2d at 88, 12 Ill.Dec. 736, 370 N.E.2d 540; Frantz, 150 Ill.App.3d at 300, 103 Ill.Dec. 649, 501 N.E.2d 966. The effect of the remandment is to complete the circuit court's order and render the judgment final. Scott, 69 Ill.2d at 89, 12 Ill.Dec. 736, 370 N.E.2d 540.
Based on the foregoing, we affirm the convictions for attempted first-degree murder and aggravated battery based on using a deadly weapon, reverse the conviction for aggravated battery based on great bodily harm, and remand this cause for sentencing on the conviction for aggravated battery based on using a deadly weapon.
Affirmed in part and reversed in part cause remanded for sentencing.
GREIMAN and GALLAGHER, JJ., concur.