THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN A. VAN KAMPEN, Defendant-Appellant.

Third District   No. 3—85—0767

Opinion filed September 17, 1986.

Robert F. Chudada and Luciano Panici, both of Cifelli, Baczynski & Scrementi, Ltd., of Chicago Heights, for appellant.

Gary L. Spencer, State's Attorney, of Morrison (Terry A. Mertel, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

After a jury trial, defendant John A. Van Kampen was convicted of aggravated battery, resisting or obstructing a peace officer and possession of a loaded gun in a vehicle. He was sentenced to a 30-month term of probation for aggravated battery, conditioned, *inter alia*, on serving 16 days of periodic imprisonment, forfeiting all weapons during the probationary period, not possessing fish or game licenses until March 1, 1987, and paying a $5,000 fine and court costs. On the resisting and possession offenses, defendant was sentenced to a probationary term of one year, to be served concurrently with the 30-month probationary sentence.

Defendant appeals from his convictions and the sentences imposed on them. Because defendant claims that the State's evidence was not sufficient to prove his guilt beyond a reasonable doubt, we initially recite the facts as they were presented at trial.

Department of Conservation Officer Merlin Howe testified that on December 7, 1984, he observed defendant's pickup truck parked along Mallott Road in Whiteside County. December 7 was one of the days of the deer hunting season, and the officer was checking for deer hunters. Howe was 71 years old. He knew defendant to be a deer hunter and knew that he had taken his limit, one deer, in Whiteside County earlier in the season. Howe pulled up and peered into the pickup, where he observed an empty gun case, an empty binocular case and a couple of empty .12-gauge-cartridge slug boxes on the floor.

Howe decided to move his marked vehicle into the bushes to a point where he could observe defendant's truck. About an hour later, defendant walked up from behind Howe's car. Defendant was wearing an orange hunting vest and cap, appropriate apparel for deer hunting.

Howe, in full uniform, got out of his car and asked defendant what he was doing. Defendant said he was "enjoying nature." Howe did not accept the explanation, and asked where defendant had hidden his gun and deer permit. Defendant suggested that they go down to his truck and he would undress so that Howe could search him. They walked to defendant's pickup, and Howe inquired abut the empty gun case he had observed in the truck. Defendant explained that he kept it in the truck in case he found a gun. He further stated that he had a loaded rifle behind the seat.

Howe opened the door to the pickup and found the cased, allegedly loaded rifle. He told defendant he was under arrest for having a loaded gun in the truck. According to Howe, when he tried to pull the gun out of the case, defendant grabbed the weapon, twisted Howe's

wrist around to break his grip and punched the officer in the chest and right shoulder. Howe determined that he could not handle the situation without back-up. He went back to his car to radio for help. Howe moved his car to face defendant's truck and was able to observe defendant ejecting shells from the rifle and then placing the shells behind the seat and the rifle and its case on the seat.

Officers McCorkle and Bartels, of the Conservation Department and State Police, respectively, arrived to assist Howe. The three officers asked defendant to get out of the truck. When he refused, they physically pulled him out and placed him in Bartels' vehicle for transportation to the Sheriff's office. An unloaded .22 rifle and ammunition from behind the seat were collected from defendant's pickup.

Howe and McCorkle searched the surrounding field for further evidence. They found a .12-gauge shotgun containing three slugs, binoculars and a deer permit hidden in the grass at the top of a knoll. The permit was issued to Loren Van Kampen of Fulton, defendant's brother, and authorized the taking of a deer from Carroll County.

McCorkle and Bartels also testified for the State, substantially corroborating the facts related by Howe.

Defendant testified on his own behalf. He stated that he had gone to his brother's (Loren's) home on the morning of December 7, intending to be a chaser for Loren to hunt deer. He wore his hunting clothes, but removed them in the house waiting for Loren to decide what he wanted to do. Loren decided to go to work instead, so defendant grabbed some clothes, mistaking his brother's vest for his own, and left to go rabbit hunting.

Defendant testified that he kept his unloaded, cased rifle behind the seat in the pickup for target practice. On Mallott Road, defendant parked the pickup and took his .12-gauge shotgun out to look for rabbits. He saw neither rabbits nor deer. Then, defendant decided to put slugs in the shotgun to sight it in for the next deer season, a year away. Through his binoculars, defendant saw Howe's car. He hid the gun, binoculars and the deer-permit tag from his brother's vest, believing that no game warden would believe that he was only sighting in the shotgun.

Defendant's version of the physical encounter with Howe was that Howe "leaned into" defendant when defendant tried to show the rifle to Howe instead of handing it over as Howe requested. Defendant asserted at trial that the rifle was not loaded, but that he had said, "Sure, Merlin, whatever you say," in response to Howe's inquiry at the scene about the gun, knowing the officer's "reputation." Defendant explained that the shells found behind the seat in his truck were

merely shells that were out of their boxes.

In addition to the foregoing occurrence witnesses, two other witnesses were called at trial before the close of defendant's case to testify to defendant's reputation as a peace-abiding citizen.

Defendant, in response to the State's pretrial discovery request, had indicated that he would introduce the testimony of Linda Van Kampen, a relative by marriage, who would testify that within the past four years she had heard Merlin Howe state that he "is going to get John Van Kampen." The prosecutor moved *in limine* to exclude this testimony on grounds that it constituted irrelevant hearsay. The motion was heard and allowed by the court. The matter was not raised thereafter in an offer of proof during defendant's presentation of evidence at trial.

■ Defendant contends on appeal that the trial court's ruling on the State's motion *in limine* was reversible error. He contends that Linda Van Kampen's testimony would have established Howe's bias and motive to testify against defendant. The record on appeal, however, fails to provide any support for defendant's position. As a general rule, an offer of proof is required to preserve error on appeal "unless 'a question shows the purpose and materiality of the evidence and if it is in proper form and clearly admits of an answer relative to the issue.' " (*People v. Samier* (1985), 129 Ill. App. 3d 966, 967, 473 N.E.2d 601, 602, quoting *People v. Moretti* (1955), 6 Ill. 2d 494, 520-21, 129 N.E.2d 709.) Here, Linda Van Kampen never testified in an offer of proof, by affidavit or otherwise. The sole indication of record of what she might have said appears in the following paragraph extracted from defendant's pretrial disclosure pursuant to Supreme Court Rule 413(d):

"Defendant believes that Linda Blanche VanKampen will testify that within the last four (4) years she heard Merlin Howe make a statement to another person that he was going to 'get John VanKampen.' "

■ Clearly, the foregoing statement falls far short of the *Moretti* test. Without any contextual information, the alleged statement is ambiguous. Without a better indication of the time frame in which the statement was allegedly made by Howe, its materiality to the case at hand cannot be determined. Moreover, the alleged statement as it appears in the record does not clearly establish that Howe's in-court testimony was the product of bias or personal antagonism toward this defendant, or otherwise not credible. Accordingly, we must conclude that defendant's failure to make a proper offer of proof of Linda Van Kampen's testimony constitutes a waiver of the issue for appeal.

■ Defendant's reasonable-doubt issue, which we address next, is premised on defendant's position that Howe's testimony was fundamentally unbelievable because of his "long-standing bias" against defendant. However, again we are restricted to the record properly before us on appeal. Defendant does not argue that the State's evidence was insufficient to prove the elements of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(6)), resisting or obstructing a peace officer (Ill. Rev. Stat. 1985, ch. 38, par. 31—1), and possessing a loaded gun in a vehicle (Ill. Rev. Stat. 1985, ch. 61, par. 2.33(n)). Howe's credibility was not impeached at trial. His testimony was corroborated by that of Officers Bartels and McCorkle. As stated above, we do not find error in the trial court's exclusion of Linda Van Kampen's alleged testimony. The jury, moreover, was not required to believe defendant's version of the facts as they conflicted with the officers' testimony. Nor was the jury required to accept defendant's subjective explanations for circumstances that culminated in the charges brought against him. The trier of fact is in a position to evaluate the credibility of witnesses by their demeanor in court. It is apparent that the jury resolved the credibility issues in this case in favor of the State's witnesses. On appeal, we will not disturb the jury's verdict unless the evidence is so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt of defendant's guilt. (*People v. Kline* (1982), 92 Ill. 2d 490, 442 N.E.2d 154.) The State's evidence as it appears in the record before us amply supports the jury's verdicts of guilty. Accordingly, we reject defendant's challenges to his convictions.

■ Lastly, defendant contends that the court erred in imposing sentences on his convictions. Defendant suggests that the sentencing court failed to specify its reasons for imposing the 30-month probationary period with conditions, as aforesaid. We find, however, that defendant has waived a statement of reasons by failing to request such at the sentencing hearing. *People v. Hicks* (1984), 101 Ill. 2d 366, 462 N.E.2d 473.

Defendant's further suggestion that the court erred in not making findings required by section 5—6—1(a) of the Illinois Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—6—1(a)), is similarly unavailing. The factors enumerated therein are required when a sentence of imprisonment is imposed. Here, the sentence imposed is one of probation, and one of the conditions is that defendant serve time in periodic imprisonment. While it is true that the statutory factors apply to this situation, we have previously held that the factors of section 5—6—1(a) need not be recited if the record indicates substantial

compliance—*i.e.*, the sentencing court reviewed and considered all of the factors presented at the sentencing hearing. *People v. McPherson* (1985), 136 Ill. App. 3d 313, 483 N.E.2d 592.

■ Our review of the record on appeal demonstrates that the substantial-compliance test was satisfied. At the time of the incident, defendant was 40 years old and the victim, Howe, was 71. Defendant's conduct threatened serious bodily harm. Moreover, defendant's criminal record included a prior conviction for resisting a peace officer. The foregoing matters were presented to and considered by the sentencing court before defendant's sentence was pronounced. Under the circumstances, a further recital of the section 5—6—1(a) factors is not required to support the imposition of periodic imprisonment as a condition of defendant's probationary sentence.

■ Defendant's challenge to the length of his sentences on the misdemeanor offenses—resisting a police officer and possession of a loaded gun in a vehicle—is unsupported by the record. The court's sentencing order clearly belies defendant's assertion on appeal that concurrent 30-month probationary sentences were imposed, rather than the statutorily authorized one-year period of probation (Ill. Rev. Stat. 1985, ch. 38, par. 1005—6—2(b)(3)), which was, in fact, the sentence imposed for the misdemeanors. Finally, we are not persuaded by defendant's bald assertion that the 30-month sentence of probation and the conditions attached thereto for the felony offense—aggravated battery—were either unauthorized or clearly excessive. Suffice it to say, our review of the record demonstrates that the conditions imposed upon sentencing defendant to probation were within the court's authority (*People v. Whittington* (1980), 87 Ill. App. 3d 504, 409 N.E.2d 150), and we find no abuse of the court's discretion in the length of the probationary sentence imposed.

For the reasons stated herein, we affirm the judgment of the circuit court of Whiteside County.

Affirmed.

WOMBACHER and HEIPLE, JJ., concur.