THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM MATTHEWS, Defendant-Appellant.

First District (2nd Division)   No. 82—2218

Opinion filed July 31, 1984.

Steven Clark and Elizabeth Clarke, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James J. Bigoness, and Mark L. Lefevour, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant William Matthews was charged by information with three counts of attempted murder, six counts of aggravated battery, and six counts of armed violence. Following a jury trial, defendant was found guilty of six counts of aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(1)) and was sentenced to 10 years' imprisonment. Defendant appeals.

Defendant knew Ethel Pugh, one of the complainants, and had been romantically involved with her at various times during the 11 years prior to November 15, 1981. On that date, Pugh began living with another man, Eddie Stinson, with whom she had been romantically involved in the past. Defendant had been seeing Pugh about this time and was unaware of her renewed involvement with Stinson. Defendant repeatedly attempted to call Pugh but was told each time that she was not at home.

On November 25, 1981, defendant had tried, unsuccessfully, to call Pugh. From the evening of November 25 until 6:15 a.m. the following day, defendant drank a pint and a half of whiskey. After 6:15 a.m. on November 26, defendant drank an additional fifth of whiskey at his home.

On November 25, 1981, Eddie Stinson slept at Ethel Pugh's apartment. Also in the apartment were Pugh's four children, one of Pugh's friends, Devina Green, and Phillip Pugh, Ethel's brother.

At 8 a.m. on November 26, Stinson heard someone banging on the front door. He went to the door and opened it, whereupon he encountered the defendant standing in the doorway with a baseball bat in one hand and a pistol in the other. Defendant walked past Stinson toward the bedroom where Ethel Pugh was sleeping. Stinson ran over to the couch to wake up Phillip, and the two went to call the police.

Ethel Pugh got out of bed and opened her bedroom door, where

she met defendant standing with the baseball bat and pistol. Defendant put the pistol in his waistband and began beating Pugh with the bat. Danella Brown, one of Pugh's children, ran into the bedroom and grabbed defendant. He struck Brown with the gun and she left the room. The gun fell to the floor and defendant picked it up and struck Pugh on the head with the butt.

Devina Green had been sleeping on the couch when she heard screams coming from the bedroom. She ran into the bedroom, where she saw defendant beating Pugh about the head and arms with a bat. As Green told Pugh to get up and run, the gun discharged and struck Green in the chest.

As defendant was leaving the apartment, Brown was attempting to call the police. Defendant returned to strike her several more times with the bat. Defendant testified that he did not recall striking Pugh with a bat and did not remember firing his gun.

Following a jury trial, defendant was found guilty on six counts of aggravated battery and was sentenced to three concurrent terms of 10 years' imprisonment. Defendant then instituted this appeal.

Defendant first contends that a psychiatric fitness report, submitted prior to trial pursuant to court order, failed to meet statutory requirements. Consequently, defendant claims he is entitled to a new trial.

■ The State argues that this issue has been waived by defendant's failure to object to the sufficiency of the report before, during, or after trial, and by his failure to raise the issue in a post-trial motion. Section 104—11 of the Code of Criminal Procedure of 1963 provides that the issue of defendant's fitness may be raised at any appropriate time before, during, or after trial. (Ill. Rev. Stat. 1981, ch. 38, par. 104—11)(a).) It is not equally apparent that the issue of the adequacy of a fitness report may likewise be raised at any appropriate time. A question as to a defendant's fitness is fundamentally different than a question as to the statutory sufficiency of a fitness report. Where, as here, no issue is raised as to defendant's fitness to stand trial and the sole issue is the adequacy of the psychiatric fitness report, we find that the general rule of waiver applies. Under this general rule, defendant's failure to object during trial and to raise the issue of the fitness report in a post-trial motion resulted in a waiver of the issue on appeal. (*People v. Foster* (1979), 76 Ill. 2d 365, 380, 392 N.E.2d 6.) We note that defendant exhibited no behavior prior to, during or following trial which could reasonably be construed as raising a *bona fide* doubt as to defendant's competency. This fact buttresses our finding of a waiver.

Our decision in *People v. Harris* (1983), 113 Ill. App. 3d 663, 447 N.E.2d 941, does not dictate a contrary result. In *Harris*, we granted defendant a new trial because of the trial court's failure to hold a competency hearing despite evidence which we felt gave rise to a reasonable doubt as to the defendant's fitness to stand trial. This holding obviated the need to address the defendant's contention concerning the adequacy of his psychological fitness report. However, in an effort to avoid a second appeal involving this issue, we addressed it. We took this action despite the State's argument that the defendant had waived the issue by failing to object to the report at trial. A relaxation of the waiver rule in *Harris* was warranted in light of the fact that the issue being addressed was not controlling and because of our concern that the inadequate fitness report be corrected on retrial. It was these unique circumstances which prompted us to address the issue of the fitness report despite the defendant's failure to raise the issue at trial. No such unique circumstances are presented in the instant case and we therefore refuse to relax the waiver rule.

■ Defendant next contends that the trial court erred by giving a non-IPI instruction to the jury concerning the defense of voluntary intoxication. The pattern instruction concerning voluntary intoxication provides that:

"[(An intoxicated) (A drugged)] person is criminally responsible for his conduct unless his [(intoxication) (drugged condition)] renders him incapable of acting [(knowingly) (intentionally)]." (Illinois Pattern Jury Instruction (IPI), Criminal, No. 24-25.02 (2d ed., 1981)

The instruction which was submitted by the State, approved by the court, and given to the jury provided that:

"A person who is voluntarily intoxicated is criminally responsible for his conduct unless the intoxication is *so extreme as to suspend all reason* and render him incapable of acting knowingly and intentionally." (Emphasis added.)

Defendant contends that the addition of the highlighted material to the IPI instruction may have misled the jury into believing that the defense of voluntary intoxication consisted of two elements rather than one. Defendant concludes that the jury's confusion regarding the defense entitles him to a new trial.

Generally, the decision whether to give a non-IPI instruction rests within the sound discretion of the trial court. (*People v. Stamps* (1982), 108 Ill. App. 3d 280, 298, 438 N.E.2d 1282.) Non-IPI instructions should be given, however, only when there is no IPI in-

struction which accurately states the applicable law. (108 Ill. App. 3d 280, 298-99.) In the instant case, there is no question that IPI Criminal No. 24-25.02 submitted by defense counsel accurately stated the applicable law concerning the defense of voluntary intoxication. Thus, the trial court abused its discretion by submitting a modified version of the pattern instruction to the jury. However, in allowing the modification, the trial court did not create an erroneous instruction. Indeed, the modification accurately defines the degree of intoxication necessary to sustain the defense of voluntary intoxication as it has been enunciated by reviewing courts. (See *e.g., People v. Crosser* (1983), 117 Ill. App. 3d 24, 28, 452 N.E.2d 857.) Furthermore, a challenged instruction should not be viewed in isolation; it must be viewed in the context of the entire charge. *People v. Housby* (1981), 84 Ill. 2d 415, 433-34, 420 N.E.2d 151.

■ In the instant case, defendant contends that the modified instruction may have prevented the jury from recognizing that his degree of intoxication need only have been such as to prevent him from forming the requisite specific intent to commit the crime with which he was charged. But the definitional and issues instructions on battery and aggravated battery repeatedly note the requirement that defendant must have acted knowingly and intentionally and that he must have been capable of acting knowingly and intentionally. Thus, upon viewing the instructions in their entirety, we find it difficult to say that the jury lost sight of the fact that the level of defendant's intoxication related to his ability to act knowingly and intentionally. Though we disapprove of the practice of constructing jury instructions from language used by reviewing courts, we conclude that the trial court's erroneous submission of a non-IPI instruction in this case was harmless beyond a reasonable doubt.

■ Defendant next contends that Danella Brown did not suffer "great bodily harm" and that, therefore, his aggravated battery conviction as to Brown must be vacated.

Danella Brown testified that when she discovered defendant beating her mother, defendant struck her on the head with a gun. Brown then attempted to call the police, and defendant began striking her on the head and arms with a baseball bat. Ethel Pugh corroborated Brown's testimony that defendant struck Brown with a baseball bat. Devina Green testified that defendant struck Brown on the head and arm with a bat with three full-force blows.

Despite this testimony, defendant points to Brown's statement that "I only had a bruise on my head" as evidence that Brown did not suffer great bodily harm. Defendant also points to the lack of

evidence that Brown's injuries required medical attention. Neither of these facts leads to the conclusion that Brown did not suffer great bodily harm.

In *People v. Olmos* (1978), 67 Ill. App. 3d 281, 384 N.E.2d 853, the victim suffered welts on his back after being struck with a chain. The victim testified at trial that the marks on his back were not "real bad" and that he did not seek medical attention for his injuries. (67 Ill. App. 3d 281, 289.) Despite this evidence, the jury found defendant guilty of aggravated battery causing great bodily harm.

On appeal, the court noted the well-settled rule that what constitutes great bodily harm is a question of fact for the jury to determine. (67 Ill. App. 3d 281, 289.) The court went on to state that the question is not what the victim did or did not do to treat his injuries, but rather, what injuries he in fact received. The court noted that the victim had been whipped with a chain and that his eye was cut. Based on this evidence, the court held that the jury's finding of great bodily harm was not so improbable or unjustified as to require a reversal. *People v. Olmos* (1978), 67 Ill. App. 3d 281, 289-90; accord, *People v. Cross* (1980), 84 Ill. App. 3d 868, 872, 406 N.E.2d 66 (victim struck on head with lead pipe); *People v. Carmack* (1977), 50 Ill. App. 3d 983; 985-86, 366 N.E.2d 103 (victim beaten with club; gashed; bruised; bleeding; no medical attention sought); *People v. Brown* (1974), 18 Ill. App. 3d 1049, 1054, 310 N.E.2d 498 (victim punched and kicked).

Based upon the foregoing authorities, it is apparent that in the instant case there was sufficient evidence from which the jury could conclude that Danella Brown suffered great bodily harm. Brown's statement as to the extent of her injuries did not preclude the jury from reaching this conclusion. We find that the jury's verdict was supported by the evidence.

■■ ■ Defendant's final contention is that the trial court's imposition of an extended-term sentence of 10 years was excessive in light of the evidence of his rehabilitative potential.

Defendant's conviction for aggravated battery, a Class 3 felony, carries with it a sentence of 2 to 5 years. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(6).) If, however, defendant's conduct is found to be brutal and heinous, defendant may be sentenced to an extended term of 5 to 10 years. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a)(5).) In the instant case, the trial court found that defendant's conduct was brutal and heinous and, accordingly, sentenced defendant to an extended-term sentence. Defendant does not contend that

it was improper to sentence him under the extended term sentencing provision. Rather, defendant contends that, in light of his unblemished record, family responsibilities and potential for rehabilitation, he should not have received the maximum extended-term sentence of 10 years.

Defendant is correct that a sentencing judge must, in addition to considering the seriousness of the offense, give adequate consideration to defendant's rehabilitative potential. (*People v. Crosser* (1983), 117 Ill. App. 3d 24, 31-32.) Though these facts are to be accorded equal weight in fixing punishment, it is for the judge to strike a proper balance between them. (117 Ill. App. 3d 24, 31-32.) The trial judge is present during the course of the trial and the sentencing hearing and is thus in a far superior position to evaluate the appropriate sentencing factors than is a court of review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) For this reason, the trial judge's sentencing decision is entitled to great deference and will not be disturbed on appeal absent an abuse of discretion. 68 Ill. 2d 149, 154.

In the instant case, the trial judge, in rendering sentence, emphasized the brutality of defendant's conduct in using a baseball bat and a gun in his attack upon two women and a child. Apparently, the court felt that the seriousness of defendant's crime called for the maximum sentence of 10 years and that defendant's rehabilitative potential did not warrant a reduction of that sentence. We have found no evidence in the record that the trial judge abused his sentencing discretion. Under these circumstances, it would be improper for us to substitute our judgment for the trial court's even if we would have imposed a different sentence had that function been delegated to us. 68 Ill. 2d 149, 156.

For the reasons expressed herein, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN, P.J., and DOWNING, J., concur.