# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Cisneros*, 2013 IL App (3d) 110851

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAFAEL Q. CISNEROS, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0851 |
| Filed | September 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for aggravated battery based on great bodily harm, defendant's contention that his conviction should be reduced to battery because the State failed to prove that the victim suffered great bodily harm was rejected, since the evidence showed the victim had five lacerations, his shirt was soaked with blood, he received stitches to two of his wounds, and the trier of fact had sufficient evidence to conclude that great bodily harm was inflicted. |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 11-CF-511; the Hon. Frank R. Fuhr, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Jack Hildebrand, of State Appellate Defender's Office, of Elgin, for appellant.

John L. McGehee, State's Attorney, of Rock Island (Terry A. Mertel and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice McDade specially concurred, with opinion.

**OPINION**

¶ 1    A Rock Island County jury convicted defendant, Rafael Q. Cisneros, of aggravated battery causing great bodily harm (720 ILCS 5/12-4(a) (West 2010)). The trial court sentenced him to 18 months' probation. Defendant appeals. The sole question posed in this appeal is: Did the State prove beyond a reasonable doubt that the victim suffered great bodily harm? It did. We affirm.

¶ 2                                    FACTS

¶ 3    The State charged defendant with two counts of aggravated battery for stabbing Jose Gomez in the back with a knife on June 3, 2011. 720 ILCS 5/12-4(a), (b)(1) (West 2010). Count I charged that defendant knowingly caused great bodily harm (720 ILCS 5/12-4(a) (West 2010)), and count II charged that he used a deadly weapon to knowingly cause bodily harm (720 ILCS 5/12-4(b)(1) (West 2010)).

¶ 4    At trial, Gomez testified that on the night of June 3, 2011, after he parked his vehicle at his house, someone threw a beer bottle at the passenger side door. Defendant and three other men were across the alley in defendant's garage. Gomez walked into the alley and asked them who threw the bottle. Defendant responded that he threw the bottle. Defendant walked toward Gomez, put his hand in his pocket, and then removed it. It was dark. Gomez could not see anything in defendant's hand. Defendant hit Gomez; the fight was on. During the fight, defendant cut Gomez on his left hand, the left side of his neck, left shoulder, left side of his back, and left forearm.

¶ 5    The fight ended when Gomez pushed defendant away because he noticed his white shirt was red with blood. Gomez asked defendant if he had a knife. Defendant said no and told Gomez that he must have cut himself with his own keys. Gomez went home; his nephew called the police. Gomez later went to the hospital, where he received four stitches in his

hand and two in his back. Gomez also showed the jury the scars resulting from the injuries to his hand, neck, shoulder, back, and forearm.

¶ 6        Moline police officer Brett Kopf testified that he responded to a call at Gomez's house. Kopf saw injuries to Gomez's upper torso and neck. Gomez held his shirt to his neck injury, which Kopf described as a deep puncture wound. Gomez told Kopf that defendant had stabbed him. When Kopf approached defendant at his house, he found a box cutter lying in close proximity to defendant.

¶ 7        Police officer Michael Griffin testified that he was a certified paramedic and was also certified in international trauma life support. Approximately one hour after the incident, Griffin went to the hospital and photographed Gomez's injuries. Griffin described the injuries as a scratch on Gomez's forehead, a laceration to his left hand, a small laceration to his left forearm, a small laceration to his left shoulder, a long laceration to his left collar bone, and a laceration to the left side of his neck. Griffin also photographed a dressing applied to the wound on the left side of Gomez's back. Griffin did not remove the dressing for the photograph because "prior to [Griffin's] arrival at the hospital this had been bleeding the most significantly so prior to [his] arrival to take photographs it had been properly dressed by the trauma surgeon to control bleeding and [he] was not going to remove that for the purpose of a photograph." Griffin also photographed Gomez's blood-soaked shirt. Griffin described the injuries as not very deep, a few layers into the skin. This description, at least with respect to the back and hand wounds, of the injuries is contradicted by the photographs, Officer Kopf's testimony, the treatment received, and the victim's testimony. Griffin opined that the injuries were caused by a sharp, straight-edged weapon and made by slashing rather than stabbing.

¶ 8        The jury found defendant guilty of aggravated battery causing great bodily harm (count I), but could not reach a verdict on aggravated battery with a deadly weapon (count II). Defendant filed a posttrial motion, arguing that the State failed to prove defendant caused great bodily harm to Gomez. The trial court denied defendant's motion and sentenced him to 18 months' probation. Defendant appeals.

¶ 9                                                  ANALYSIS

¶ 10      Defendant argues that the State failed to prove beyond a reasonable doubt that Gomez suffered great bodily harm and, therefore, his conviction for aggravated battery based on great bodily harm should be reduced to battery.

¶ 11      When a defendant challenges the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Beauchamp*, 241 Ill. 2d 1 (2011); *People v. Collins*, 106 Ill. 2d 237 (1985). It is not this court's function to retry a defendant who challenges the sufficiency of the evidence. *People v. Ross*, 229 Ill. 2d 255 (2008). The trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence. *Id.* We will not set aside a defendant's conviction unless the evidence was so improbable, unsatisfactory, or

inconclusive that it creates a reasonable doubt of defendant's guilt. *Beauchamp*, 241 Ill. 2d 1.

¶ 12    To convict a defendant of aggravated battery, the State must prove beyond a reasonable doubt that in committing a battery, defendant intentionally or knowingly caused great bodily harm or permanent disability or disfigurement. 720 ILCS 5/12-4(a) (West 2010). Whether the victim's injuries rise to the level of great bodily harm is a question for the trier of fact. *People v. Cochran*, 178 Ill. App. 3d 728 (1989).

¶ 13    Here, the evidence at trial established that Gomez had five lacerations to his body as a result of the altercation with defendant. Blood from the cuts to Gomez's hand, neck, shoulder, back, and forearm completely soaked his shirt. Photographs of Gomez's injuries revealed a deep gash to his hand, a long laceration to his shoulder, a neck wound with a portion of the flesh loose from the underlying tissue, and a shallow laceration to his forearm. Although the record does not contain a photograph of Gomez's back wound, the evidence indicated that it required stitches to close. Gomez received medical treatment for his injuries, which included stitches to his hand and back. The jury viewed Gomez's scars from each of the five lacerations. Viewing this evidence in the light most favorable to the State, we conclude that a rational jury could have found Gomez suffered great bodily harm. See *Beauchamp*, 241 Ill. 2d 1.

¶ 14    First, defendant characterizes the victim's wounds, including the one on the victim's back, as "superficial." Superficial wounds do not require stitches. Next, defendant argues that Gomez's injuries cannot qualify as great bodily harm because they were not greater and more serious than our supreme court's definition of injuries qualifying as bodily harm. See *People v. Mays*, 91 Ill. 2d 251 (1982); *People v. Figures*, 216 Ill. App. 3d 398 (1991). In *Mays*, our supreme court defined bodily harm, as it relates to a battery, as some sort of physical pain or damage to the body, like lacerations, bruises, or abrasions, whether temporary or permanent. The appellate court in *Figures* construed the language in *Mays* as a definition of bodily harm for "simple" battery. From this definition, defendant claims that injuries limited to lacerations cannot qualify as great bodily harm. We disagree.

¶ 15    Defendant relies heavily upon *Figures* in support of his argument that the State failed to prove great bodily harm. In our opinion, the *Figures* court's analysis is based largely, if not primarily, on a misreading of the Illinois Supreme Court's decision in *Mays*, 91 Ill. 2d 251. *Figures*, 216 Ill. App. 3d at 401. The *Figures* court concluded:

    "The Illinois Supreme Court has provided some guidance in defining the term 'bodily harm' *as it relates to simple battery*:

    '[a]lthough it may be difficult to pinpoint exactly what constitutes bodily harm for the purposes of the statute, some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent, is required.' (*People v. Mays*, [91 Ill. 2d 251, 256 (1982)].)

    Because great bodily harm requires an injury of a graver and more serious character than an ordinary battery, simple logic dictates that the injury must be more severe than that set out in the *Mays* definition." (Emphasis added.) *Id.*

The appellate court's analysis in *Figures* missed the import of what the supreme court was

doing in *Mays*. Specifically, the court's conclusion that the supreme court was "defining the term 'bodily harm' *as it relates to simple battery*" finds no support in *Mays*. (Emphasis added.) *Id.*

¶ 16    In *Mays*, 91 Ill. 2d 251, the court was dealing with Mays' rape conviction. One issue raised by the defendant was whether the trial court erred in refusing his tendered jury instruction for the offense of battery. Defendant argued that battery was a lesser-included offense of rape and, therefore, he was entitled to a battery instruction. The supreme court noted:

> "Battery, on the other hand, can be committed in two ways: first, by intentionally or knowingly, without legal justification and by any means, causing bodily harm to an individual, and second, under the same circumstances, making physical contact of an insulting or provoking nature. Ill. Rev. Stat. 1977, ch. 38, par. 12-3.
>
>     As noted above, however, defendant requested an instruction only on battery by bodily harm. Although it may be difficult to pinpoint exactly what constitutes bodily harm for the purposes of the statute, some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent, is required. Otherwise there would be no need for *the other type of battery*, contact of an insulting or provoking nature." (Emphasis added.) *Id.* at 256.

Clearly, the supreme court did not intend the description of "battery by causing bodily harm" to be a description of the threshold requirements for proving simple battery. Rather, it was describing the difference between battery by bodily harm and battery by insulting or provoking contact.

¶ 17    In *Mays*, the defendant was neither charged nor convicted of battery, only rape. Had he been charged with battery, undoubtedly it would have been of the aggravated variety. The evidence established that before defendant raped the victim, he first beat her until she was unconscious. Defendant waited until the victim regained consciousness and then raped her. He argued that he was entitled to a battery instruction as a lesser-included element of the rape. In quoting the supreme court's language regarding bodily harm for the purposes of the battery statute, defendant and *Figures* both ignore the context of the supreme court's discussion of battery requirements. Compare the actual quote from *Mays* (*supra* ¶ 16) to the redacted quote from *Mays* used by the *Figures* court (*supra* ¶ 15).

¶ 18    We reject the notion that the supreme court's discussion in *Mays* is somehow useful in distinguishing battery from aggravated battery. Clearly, the supreme court was differentiating battery by bodily harm from battery by insulting or provoking contact. Additionally, can any reasonable person accept the notion that the supreme court meant to say that a victim left with "permanent" "physical pain or damage to the body" has not suffered great bodily harm, but only bodily harm? Because if, as *Figures* posits, the *Mays* court was defining simple battery, then that is what we are left with. To the contrary, the court's language makes it clear that it was describing all varieties of bodily harm: minor, great and in-between. However, it did so in the context in which it found itself: discussing whether battery is a lesser-included offense of rape. The *Mays* court had no reason to discuss aggravated battery.

¶ 19    We are similarly unpersuaded by defendant's reliance on *In re J.A.*, 336 Ill. App. 3d 814

(2003), and *In re T.G.*, 285 Ill. App. 3d 838 (1996). In *J.A.*, the court did not find great bodily harm, despite the victim being stabbed once in the shoulder, because the victim described the stab as if someone had pinched him, and no evidence was presented regarding the nature of the wound. *J.A.*, 336 Ill. App. 3d 814. In *T.G.*, the victim was stabbed three times in the chest, but only felt the first one, which he described as being poked with a pen. *T.G.*, 285 Ill. App. 3d 838. Finding no other evidence regarding the nature or extent of the victim's injuries, the court concluded that great bodily harm was not proven. *Id.* Both of these cases adopt *Figures*' faulty analysis of the *Mays* decision. *T.G.*, 285 Ill. App. 3d at 846; *J.A.*, 336 Ill. App. 3d at 816.

¶ 20    In the instant case, there was extensive information regarding the seriousness of Gomez's injuries, including photographic evidence and a visual display of his numerous scars. See, *e.g.*, *People v. Doran*, 256 Ill. App. 3d 131 (1993) (finding sufficient evidence to support great bodily harm where the record contained pictures to demonstrate the victim's injuries, which included bruises, lacerations, and a concussion, and the victim showed the scar on his forehead); *People v. Smith*, 6 Ill. App. 3d 259 (1972) (finding great bodily harm where defendant struck the victim twice in the face with his fist, gave her a lump in her mouth, put a scar on her face, and left bruises under her chin).

¶ 21    Likewise, the absence of medical testimony regarding the severity or permanency of Gomez's lacerations did not preclude the jury from finding great bodily harm. See *People v. Jordan*, 102 Ill. App. 3d 1136 (1981) (finding of great bodily harm is not dependent upon hospitalization of the victim or even that the victim received medical attention); *People v. Matthews*, 126 Ill. App. 3d 710 (1984) (finding great bodily harm where victim, who was struck on the head with a gun and struck several times on the head and arms with a baseball bat, only received a bruise on her head and did not require medical attention). Here, the victim testified that he went to the hospital, where his treatment included two stitches to close the wound to his back. The jury saw the scar. The trier of fact in this case was presented with sufficient evidence to find defendant inflicted great bodily harm on Gomez.

¶ 22                                    CONCLUSION

¶ 23    For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

¶ 24    Affirmed.

¶ 25    JUSTICE McDADE, specially concurring.

¶ 26    I concur in the result reached by the majority. I write separately because I find no need to discredit the use of *People v. Figures*, 216 Ill. App. 3d 398 (1991), and *People v. Mays*, 91 Ill. 2d 251 (1982), in analyzing this case. Under the approach set out in *People v. Figures*, 216 Ill. App. 3d 398 (1991), there was sufficient evidence for the jury to conclude that defendant inflicted great bodily harm on the victim. Defendant argues that the victim's injuries only consist of lacerations and that *Figures* stands for the proposition that lacerations

are only ordinary bodily harm and thus cannot constitute great bodily harm. As does the majority, I disagree.

¶ 27 The *Figures* court stated that for the purposes of simple battery, bodily harm requires " 'some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent.' " *Figures*, 216 Ill. App. 3d at 401 (quoting *People v. Mays*, 91 Ill. 2d 251, 256 (1982)).[1] According to *Figures*, "[b]ecause great bodily harm requires an injury of a graver and more serious character than an ordinary battery, simple logic dictates that the injury must be more severe than that set out in the *Mays* definition." *Figures*, 216 Ill. App. 3d at 401. *Figures* does not support defendant's conclusion that lacerations *cannot* constitute great bodily harm; instead, to constitute great bodily harm, lacerations would have to be of a grave and serious character, as opposed to of a minor or trivial character. To conclude that lacerations could never be great bodily harm would define the element as a matter of law, when instead it is a question of fact. See, *e.g.*, *People v. Lopez-Bonilla*, 2011 IL App (2d) 100688, ¶¶ 13-14.

¶ 28 Here, there was sufficient evidence to support the jury's conclusion that the victim's lacerations were not minor or trivial: defendant cut the victim with a straight-edged weapon, the victim had cuts on his hand and back large enough to require stitches to close, as well as a neck wound which was described as deep, and the victim bled significantly from these wounds. Therefore, I concur with the decision to affirm defendant's conviction.

---

[1]The majority's discussion of the context of the *Mays* and *Figures* decisions is accurate, and I agree that *Mays* cannot be construed as setting out a comprehensive definition of ordinary bodily harm. But I do not agree that *Mays* cannot guide our inquiry here. Courts have repeatedly held that to give effect to the word "great" in the offense of aggravated battery based on great bodily harm, the harm inflicted must be more severe than the mere "bodily harm" required for a simple battery. See *Figures*, 216 Ill. App. 3d at 401; *People v. Costello*, 95 Ill. App. 3d 680, 684 (1981). Therefore, to distinguish between ordinary and great bodily harm, the trier of fact must have some sort of baseline against which to measure the defendant's injuries so it can determine whether those injuries are trivial or minor–thus mere bodily harm–or serious and grave. The majority discredits *Figures*, but does not offer a way to make that distinction. The discussion of bodily harm in *Mays* is instructive, however, because injuries that are limited to mere lacerations, bruises, or abrasions do not normally signify great bodily harm. See *In re J.A.*, 336 Ill. App. 3d 814, 817 (2003) ("We have repeatedly articulated the proposition that 'great bodily harm' is more serious or grave than lacerations, bruises, or abrasions that characterize 'bodily harm.' "). Therefore, I believe that the court's discussion in *Mays* remains a useful guidepost for distinguishing ordinary from great bodily harm, and would continue to adhere to *Figures* and the cases that follow it.