# Illinois Official Reports

## Appellate Court

---

## *People v. Moore*, 2019 IL App (3d) 160639

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD A. MOORE, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0639 |
| Filed<br>Rehearing denied | January 23, 2019<br>February 19, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 14-CF-44; the Hon. Amy M. Bertani-Tomczak, Judge, presiding. |
| Judgment | Affirmed and remanded with directions. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Amber Hopkins-Reed, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, David J. Robinson, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justices Lytton and McDade concurred in the judgment and opinion. |

¶ 1 Defendant, Richard A. Moore, appeals his conviction for aggravated battery. Defendant argues that the evidence at his trial was insufficient to prove beyond a reasonable doubt that the victim suffered great bodily harm as a result of the battery. Defendant also argues that he is entitled to $5 in presentence incarceration credit for one partial day spent in presentence custody. We affirm and remand with directions.

¶ 2                                     I. BACKGROUND

¶ 3 Defendant was charged with aggravated battery (720 ILCS 5/12-3.05(a)(1) (West 2012)) in that he caused great bodily harm to Zachary Lofdahl by striking Lofdahl about the body with a metal object.

¶ 4 A bench trial was held. Lofdahl testified that he worked for Navistar National Harvester (Navistar) at the time of the incident. Defendant also worked at Navistar. On the day of the incident, Lofdahl told defendant that he was loading parts into a box incorrectly. Lofdahl told defendant "don't be a dumb a*** and do it the right way." Defendant told Lofdahl not to tell him how to do his job. Defendant walked away. Lofdahl did not remember what happened after that. Lofdahl said "the next thing you know I was in the hospital with a bunch of stitches inside my head." The prosecutor asked Lofdahl if he lost consciousness. Lofdahl replied: "Yes, to my knowledge. Like, I don't remember what happened after that."

¶ 5 Lofdahl testified that he suffered a 3½-inch gash on the side of his head and a swollen right eye on the day of the incident. Lofdahl went to "quick care" that day, where he received stitches and medication. The next day, Lofdahl went to a hospital. He stayed in the hospital for four days and received a computerized tomography scan. Lofdahl testified that he was off work for three months after the incident.

¶ 6 Prior to going to the hospital the day after the incident, Lofdahl went to Navistar to give a written statement. Lofdahl testified that his girlfriend drove him there. Lofdahl said that she drove him everywhere for a month or two after the incident. Lofdahl acknowledged that the written statement said that he did not remember anything that happened at work on the day of the incident after he clocked in. Lofdahl explained that he was "still not in the right state of mind" when he wrote the statement because he "just got clocked in the head." When asked if he could independently recall giving the written statement, Lofdahl replied: "It was here and there. *** I was still out of the state of mind when I went to the home after I signed that. Like I had people visit me, and I didn't really remember them visiting me."

¶ 7 Edward Stromik testified that he was employed at Navistar as a distribution supervisor. On the date of the incident, defendant and Lofdahl were employees that he was supervising. At some point, dock employees called for Stromik's attention. Stromik observed Lofdahl walking away from the dock holding his head, which was bleeding. Stromik followed Lofdahl to the restroom. Stromik asked Lofdahl what was wrong, and Lofdahl said he was unsure. Stromik asked Lofdahl questions, but Lofdahl "was not really responding in any manner that [Stromik could] comprehend." Stromik called for a first aid responder to attend to Lofdahl. Stromik returned to the area where the incident occurred and observed blood on the floor and on a box.

¶ 8 Adam Turner testified that he was employed at Navistar on the date of the incident. Turner heard Lofdahl and defendant arguing over the positioning of the content that went into the

boxes. Turner observed defendant pick up a bearing and throw it at Lofdahl. The bearing weighed approximately 10 pounds, and it struck Lofdahl near his temple. Lofdahl fell down and then "popped back up in a daze, a delirious state." Turner testified that Lofdahl was not stable on his feet when he stood up. Lofdahl was "in pretty bad shape," and there was blood on the floor.

¶ 9 Vernon Foster testified that he was employed at Navistar on the date of the incident. Foster observed defendant throwing parts into a box. Lofdahl and Turner told defendant to stop tossing the parts. Foster observed Lofdahl fall down and saw a brushing fall to the floor.[1] Foster explained that a brushing was "a little small heavy piece of metal" weighing approximately five pounds. Lofdahl had been hit with the brushing. Foster observed Lofdahl trying to stand up after he fell down. Foster tried to get Lofdahl to stay on the ground until the first responders came because Foster believed that Lofdahl "had to have been dizzy." Lofdahl stood up anyway. Foster followed Lofdahl to the back of the warehouse. Foster tried to get Lofdahl to sit down. Lofdahl was "bleeding everywhere."

¶ 10 The State rested.

¶ 11 Defendant testified that he did not throw anything at Lofdahl on the date of the incident. Instead, Lofdahl hit defendant in the leg several times with a box containing a metal part. This caused defendant to sustain a bruise on his leg. Defendant started running, and Lofdahl chased him. The door to the management office opened, and Lofdahl stopped chasing defendant. Lofdahl started running in another direction. Lofdahl was "crouching kind of low." Lofdahl then turned his head and hit a pack mule. Lofdahl started bleeding. Lofdahl began walking toward his forklift, but he was swaying and stumbling. Foster made him sit down. Defendant heard Lofdahl say that he and Foster should say defendant threw something at him. Foster agreed. Turner told Lofdahl that he could get in trouble for starting a fight with defendant. Lofdahl said that he would not get in trouble if they said that defendant threw something at Lofdahl. Defendant testified that Lofdahl and Foster had made fun of him and called him names in the past. Turner laughed when Foster and Lofdahl made fun of defendant.

¶ 12 The court found defendant guilty of aggravated battery. The court sentenced defendant to 24 months' probation and ordered that he pay $1457 in monetary assessments.

¶ 13 II. ANALYSIS

¶ 14 A. Sufficiency of the Evidence

¶ 15 Defendant argues that his conviction should be reduced from aggravated battery to simple battery because the State failed to prove beyond a reasonable doubt that Lofdahl suffered great bodily harm. We find that, when viewed in the light most favorable to the State, the evidence was sufficient to show that Lofdahl suffered great bodily harm.

¶ 16 "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Rather, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

---

[1]Defendant later testified that the part in question was called a "bushing" or a "bearing." Although various witnesses referred to the part as a "brushing," a "bushing," or a "bearing," it was not clear that there was any disagreement as to what part they were referring to.

beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Id.*

¶ 17    To prove defendant guilty of aggravated battery, the State was required to prove beyond a reasonable doubt that, in committing a battery, defendant knowingly caused great bodily harm to Lofdahl. 720 ILCS 5/12-3.05(a)(1) (West 2012). On appeal, defendant does not dispute that a battery took place. Rather, defendant argues that Lofdahl's injuries did not rise to the level of great bodily harm as opposed to mere bodily harm. "Whether the victim's injuries rise to the level of great bodily harm is a question for the trier of fact." *People v. Cisneros*, 2013 IL App (3d) 110851, ¶ 12.

¶ 18    We find that the evidence in this case, when viewed in the light most favorable to the State, was sufficient for a rational trier of fact to find that the State had proven beyond a reasonable doubt that Lofdahl suffered great bodily harm as a result of the battery. The testimony at trial indicated that the item that struck Lofdahl's head weighed approximately 5 to 10 pounds. Lofdahl testified that he incurred a 3½-inch gash on the side of his head and a swollen right eye. Stromik, Foster, and Turner testified that Lofdahl was bleeding significantly as a result of his injury. Lofdahl testified that he received stitches for his laceration and an unspecified medication.

¶ 19    While there was no evidence of Lofdahl receiving a specific head injury, the evidence was sufficient for the court to infer that Lofdahl suffered memory loss as a result of the incident. Lofdahl testified that he could not remember anything that happened on the day of the incident from the time defendant started walking away from him until the time he received stitches. The day after the incident, Lofdahl could not remember anything that happened on the day of the incident after he clocked in at work. Lofdahl explained that he "was still not in the right state of mind" at the time he gave the statement because he had "just got clocked in the head." Lofdahl also testified that people visited him after the incident, and he did not remember their visits. Stromik testified that he asked Lofdahl what happened immediately after the incident, but Lofdahl was unsure. Stromik said that Lofdahl did not respond to his questions "in any manner that [Stromik could] comprehend." Turner testified that Lofdahl was in a "daze" or a "delirious state" after the incident.

¶ 20    We reject defendant's argument that "the most that can be said from the evidence presented is that Lofdahl had a swollen eye and received a laceration during an incident" and that these injuries constituted mere bodily harm rather than great bodily harm. Defendant relies on *In re J.A.*, 336 Ill. App. 3d 814, 817 (2003), for the proposition that " 'great bodily harm' is more serious or grave than lacerations, bruises, or abrasions that characterize 'bodily harm.' " See also *People v. Figures*, 216 Ill. App. 3d 398, 401 (1991); *In re T.G.*, 285 Ill. App. 3d 838, 846 (1996).

¶ 21    First, we disagree with defendant's assertion that the evidence showed only that Lofdahl suffered a laceration and a swollen eye. We previously found that the evidence was sufficient to support an inference that Lofdahl also suffered memory loss as a result of his injury.

¶ 22    Moreover, we previously rejected a similar argument that injuries limited to lacerations could not qualify as great bodily harm in *Cisneros*, 2013 IL App (3d) 110851, ¶ 14. In *Cisneros*, we concluded that *Figures*, *T.G.*, and *J.A.* were largely based on a misreading of the Illinois Supreme Court's decision in *People v. Mays*, 91 Ill. 2d 251 (1982). *Cisneros*, 2013 IL App (3d) 110851, ¶¶ 15, 19. We found that there was sufficient evidence to show that the

*Cisneros* victim had suffered great bodily harm where the victim's injuries were limited to lacerations. *Id.* ¶ 13.

¶ 23    We also reject defendant's reliance on factual similarities in *T.G.* and *J.A.* Defendant contends that the courts in *T.G.* and *J.A.* found similar evidence to be insufficient to establish great bodily harm. In *T.G.* and *J.A.*, the only evidence of the victims' injuries is that they received stab wounds that felt like a poke and a pinch, respectively. *T.G.*, 285 Ill. App. 3d at 846; *J.A.*, 336 Ill. App. 3d at 818. The victim in *J.A.* also testified that an unnamed individual at the hospital advised him to have his wound stitched, but he refused. *J.A.*, 336 Ill. App. 3d at 818.

¶ 24    We find that *T.G.* and *J.A.* are factually distinguishable from the instant case. In this case, Lofdahl testified that he sustained a 3½-inch gash that required stitches as a result of the battery. Lofdahl also testified that he spent several nights in the hospital after the incident. Lofdahl and other witnesses testified that Lofdahl's wound was bleeding significantly after the incident. There was also evidence that Lofdahl suffered memory loss as a result of his injury. Thus, this case is not comparable to *T.G.* or *J.A.*, where the evidence showed only that the victims received stab wounds that felt like a poke or a pinch. *T.G.*, 285 Ill. App. 3d at 846; *J.A.*, 336 Ill. App. 3d at 818.

¶ 25    Defendant also urges us to follow the decision of the court in *In re Vuk R.*, 2013 IL App (1st) 132506. In *Vuk R.*, the victim testified that the respondent struck him several times with his fist, which broke his nose and caused him to lose consciousness. *Id.* ¶ 4. The record showed that the victim suffered a broken nose and cheek bone and an eye socket injury. *Id.* ¶ 9. Photographs of the victim's injuries showed swelling and discoloration. *Id.* The appellate court reasoned that this evidence was insufficient to establish great bodily harm because the victim and his father "testified in summary fashion about his injuries." *Id.* The court further reasoned that "[t]here was no evidence presented regarding any pain suffered by the victim (other than he was given pain medication), the details of the victim's treatment for his injuries or how long after the incident he suffered the effects of those injuries." *Id.* However, we are not required to follow the decision of the *Vuk R.* court, and we decline to do so. See *People v. Canulli*, 341 Ill. App. 3d 361, 370 (2003) ("Courts are not bound to follow decisions of equal or inferior courts.").

¶ 26    Finally, we note that several courts have found that seemingly less severe injuries constituted great bodily harm. See *People v. Matthews*, 126 Ill. App. 3d 710, 714 (1984) (holding that there was sufficient evidence that the victim suffered great bodily harm where the victim testified that she only suffered a bruise on her head); *People v. Olmos*, 67 Ill. App. 3d 281, 289-90 (1978) (holding that there was sufficient evidence that the victim suffered great bodily harm where the victim was bleeding from his eye and sustained three or four welts on his back that were 12 to 18 inches long).

¶ 27                              B. Presentence Incarceration Credit

¶ 28    Defendant argues that he is entitled to a total of $5 in presentence incarceration credit for one partial day spent in presentence custody. Section 110-14(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-14(a) (West 2012)) provides: "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant."

¶ 29    "A defendant held in custody for any part of the day should be given credit against his sentence for that day." *People v. Smith*, 258 Ill. App. 3d 261, 267 (1994). Courts have awarded presence incarceration credit in situations where defendants posted bail shortly after being arrested. *People v. Stahr*, 255 Ill. App. 3d 624, 627 (1994) (holding that the defendant was entitled to presence incarceration credit where he was arrested and released on bail in the same day); *Smith*, 258 Ill. App. 3d at 268 (holding that the defendant was entitled to *per diem* monetary credit for the day he was arrested even though he posted bail the same day); *People v. Kuhns*, 372 Ill. App. 3d 829, 838 (2007) (holding that the defendant was entitled to presence incarceration credit where he was held in custody for less than three hours).

¶ 30    In the instant case, the record indicates that a warrant for defendant's arrest was served on January 24, 2014. A presence investigation report indicates that defendant also posted bond on January 24, 2014. Thus, the record shows that defendant was in custody for one partial day. Accordingly, defendant is entitled to a credit of $5 to be applied against his applicable fines.

¶ 31    We reject the State's argument that the record does not show that defendant was ever actually incarcerated as opposed to merely being in custody. The State cites *People v. Riley*, 2013 IL App (1st) 112472, ¶ 11, for the proposition that section 110-14(a) of the Code "only allows a *per diem* monetary credit to be awarded for each day that a defendant is physically incarcerated and not merely in custody." However, we believe that it can be inferred from the fact that defendant was arrested and supplied bail that he was incarcerated at least for a short time. We also note that *Riley* is factually distinguishable from the instant case because the *Riley* defendant was seeking *per diem* monetary credit for time spent on home confinement, whereas defendant in the instant case was seeking credit for time spent in police custody following his arrest. *Id.* ¶ 6. Finally, we note that for purposes of section 110-14(a) of the Code, courts have considered defendants to be incarcerated once they have been arrested by the police. *Kuhns*, 372 Ill. App. 3d at 838; see also *Stahr*, 255 Ill. App. 3d at 627; *Smith*, 258 Ill. App. 3d at 268.

¶ 32                                    III. CONCLUSION

¶ 33    The judgment of the circuit court of Will County is affirmed. The cause is remanded to the circuit court with directions that the court apply a presence incarceration credit of $5 against defendant's applicable fines.

¶ 34    Affirmed and remanded with directions.