**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190728-U

Order filed July 2, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0728 Circuit No. 17-CF-2412 |
| CHRISTOPHER L. SANDERS, | ) ) ) | Honorable Daniel Rippy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Justice Schmidt concurred in the judgment.
Justice Lytton dissented.

_____

**ORDER**

¶ 1    *Held*:    The evidence at trial was sufficient to prove (1) that the victim suffered great bodily harm; (2) that defendant knew the victim to be 60 years of age or older; and (3) that one-act, one-crime principles mandate vacatur of defendant's convictions for less serious forms of aggravated battery.

¶ 2    Defendant, Christopher L. Sanders, appeals his convictions on three counts of aggravated battery. Defendant argues that the evidence was insufficient to establish his guilt beyond a reasonable doubt on two of the three charges. Alternatively, defendant contends that two of his

convictions must be vacated on one-act, one-crime principles. The State's evidence was sufficient but since all charges were based on the same physical act, the two lesser convictions are vacated.

¶ 3                                I. BACKGROUND

¶ 4        The State charged defendant with three counts of aggravated battery, stemming from an altercation with Russell Hamende. Each count alleged a battery against Hamende in that defendant "grabbed *** Hamende about the body and forced him to the ground." Count I included the allegation that Hamende was 60 years of age or older at the time defendant battered Hamende, causing great bodily harm or permanent disfigurement to Hamende (720 ILCS 5/12-3.05(a)(4), (h) (West 2016)). Count II alleged that defendant knew Hamende to be 60 years of age or older at the time of the battery but did not allege the great bodily harm component (*id.* § 12-3.05(d)(1)). Count III alleged that defendant committed the battery at a place of public accommodation (*id.* § 12-3.05(c)).

¶ 5        At defendant's bench trial, Hamende testified that he was working as a manager and mechanic at a Meineke shop in Crest Hill in 2017. According to Hamende, defendant would occasionally stop by the shop and attempt to sell various items to Hamende. Hamende hired defendant to work in the shop but terminated defendant's employment after just six weeks. On November 21, 2017, Hamende fired defendant for his poor job performance. Hamende stated that his conversation with defendant about the termination of defendant's employment was mild, uneventful, and defendant left the shop immediately thereafter.

¶ 6        Hamende recalled that defendant returned to the shop approximately an hour later. According to Hamende, defendant was verbally aggressive and insisted that Hamende could not fire defendant. Hamende was seated behind the counter and requested defendant to leave the premises multiple times. Defendant did not leave the premises and Hamende attempted to dial 911.

Defendant moved behind the counter and said, "[Y]ou are not f'ing calling anybody." Defendant grabbed Hamende's neck while positioned behind Hamende. Hamende "went over backwards," hitting his head on the floor. Hamende was "dazed" after striking his head on the floor, but realized he was still in defendant's grasp. Hamende was able to grab defendant's throat, at which point defendant released him. After breaking free, Hamende entered the office and called 911.

¶ 7 Hamende testified that on the date of the altercation he was 61 years old and did not provoke the physical encounter by becoming verbally or physically aggressive towards defendant. Hamende testified that after the altercation his right ear was "lacerated" and required 17 stitches. He also received an "abrasion" at the bridge of his nose and a "laceration" on his upper forearm. Hamende could not recall specifically how these injuries occurred but testified that he did not have those injuries prior to the altercation. The State introduced photographs of Hamende, taken at the scene shortly after the altercation. A photograph of Hamende's right ear shows dried blood on the lower portion of his ear and on the side of his face below the ear. A second photograph shows a wound on the bridge of Hamende's nose, with dried blood on his nose and face. A third photograph shows a laceration on Hamende's forearm, with an adhesive bandage peeled back for the photograph. Other photographs of the scene depicted smeared blood on a desk attached to a counter, as well as numerous droplets of blood on a tile floor.

¶ 8 Defendant testified that he worked from 8 a.m. to 7 p.m. five days per week, but left work at 6 p.m. on Wednesdays, because that was Hamende's bowling night. Defendant testified that Hamende was abusive toward defendant, without cause, and defendant denied poor performance of his job duties. After Hamende fired him, defendant walked home and contacted the owner of the Meineke shop. Defendant then drove back to the shop to "straighten this situation out." According to defendant, Hamende became very angry when he learned that defendant contacted

3

the store owner. Hamende stood up from where he was seated behind the counter and approached defendant on the other side of the counter.

¶ 9 According to defendant, Hamende told defendant to "get the F up out of here" and then pushed him. In response, defendant placed Hamende in a headlock in order to restrain him. Defendant denied causing Hamende to fall backward. Hamende testified that he did not suffer any injuries on that date.

¶ 10 The court found "defendant was not credible in his testimony." The court also found that "the 17 stitches that the victim received in his ear and the large gash did constitute great bodily harm." Therefore, the court found defendant guilty on all three counts of aggravated battery.

¶ 11 Following a sentencing hearing, the court sentenced defendant to a term of four years' imprisonment. The written sentencing order reflects three terms of four years' imprisonment, one on each count, running concurrently to one another.

¶ 12                                                    II. ANALYSIS

¶ 13 On appeal, defendant challenges his convictions of counts I and II on the grounds that the State's evidence was insufficient to establish defendant knew Hamende was more than 60 years of age and/or Hamende suffered greatly bodily harm or disfigurement. Alternatively, if the State's evidence was sufficient to support all three convictions, defendant argues that two convictions must be vacated based on one-act, one-crime principles. For purposes of this appeal, defendant does not challenge his conviction or sentence as charged in count III.

¶ 14                                       A. Count I – Great Bodily Harm

¶ 15 Count I of the indictment alleged that defendant caused great bodily harm or permanent disfigurement to Hamende. Defendant contends that the evidence was insufficient to establish this

element beyond a reasonable doubt, and argues that even if those injuries could be considered great bodily harm, the State failed to prove that defendant knowingly caused such harm.

¶ 16    Bodily harm, as is required of simple battery, requires "some sort of physical pain or damage to the body, like lacerations, bruises or abrasions." *People v. Mays*, 91 Ill. 2d 251, 256 (1982). " '[G]reat bodily harm' is more serious or grave than lacerations, bruises, or abrasions." *In re J.A.*, 336 Ill. App. 3d 814, 817 (2003). Whether injuries rise to the level of great bodily harm is a question to be determined by the trier of fact. *People v. Figures*, 216 Ill. App. 3d 398, 401 (1991). Accordingly, we must determine whether, considering the evidence in the light most favorable to the State, any rational trier of fact could conclude that Hamende suffered great bodily harm. See *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 17    The circuit court addressed the sufficiency of the evidence of great bodily harm by focusing entirely on the injury to Hamende's ear, as described by Hamende's testimony and documented by photographic evidence. However, Hamende's testimony also described an injury in the form of an "abrasion" on the bridge of his nose and a "laceration" on his forearm. The photographic evidence corroborated Hamende's testimony.

¶ 18    The photographs from the scene were presented to the court and document Hamende's injuries caused significant bleeding, as evidenced by the blood smeared on the desk and the droplets of blood on the floor. See *People v. Cisneros*, 2013 IL App (3d) 110851 ¶ 13 (finding great bodily harm where victim's shirt was "completely soaked" with blood).

¶ 19    Hamende testified that the injury to his ear required 17 stitches. Even a layperson may reasonably infer that a wound requiring that many stitches is quite serious. See *id.* ¶¶ 5, 21 (finding great bodily harm where victim received six total stitches for two wounds); *People v. Mandarino*, 2013 IL App (1st) 111772, ¶¶ 10, 65 (finding great bodily harm where victim received seven

5

stitches); *People v. Moore*, 2019 IL App (3d) 160639, ¶ 24 (citing unspecified number of stitches in finding great bodily harm).

¶ 20  It is well established that this court can affirm the court's ruling on any grounds supported by the record. *People v. Anderson*, 401 Ill. App. 3d 134, 138 (2010). The inquiry is not whether any of the injuries suffered by Hamende, considered individually, amounts to great bodily harm; rather, the question is whether the sum total of those injuries amounts to great bodily harm. *E.g.*, *Mandarino*, 2013 IL App (1st) 111772, ¶ 64; *Cisneros*, 2013 IL App (3d) 110851, ¶ 13. Hamende testified that in addition to the laceration to his ear, he also received an injury to the bridge of his nose and a "laceration" on his forearm. These injuries were also documented by photographs submitted to the court.

¶ 21  When viewed in the light most favorable to the State, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that the injuries described above rise to the level of great bodily harm. We therefore affirm defendant's conviction for aggravated battery under count I of the indictment.

¶ 22                          B. Count II – Hamende's Age

¶ 23  Under section 12-3.05(d)(1) of the Criminal Code of 2012, aggravated battery is committed where a person commits a battery against a person he knows to be 60 years of age or older. 720 ILCS 5/12-3.05(d)(1) (West 2016). It is well settled that in a prosecution under that section, the State must prove beyond a reasonable doubt that the defendant knew the victim to be 60 years of age or older. *E.g.*, *People v. Jasoni*, 2012 IL App (2d) 110217, ¶ 18. Defendant argues that the State failed to meet this burden.

¶ 24  The State concedes that the record does not contain direct evidence of defendant's knowledge of Hamende's age. However, the element pertaining to defendant's knowledge of

Hamende's age can be established, beyond a reasonable doubt, by circumstantial evidence revealing the unique physical characteristics and mannerisms of the victim, together with evidence of the nature of the relationship between the victim and defendant. *Id.* ¶ 22. Here, the State argues that the circumstantial evidence was sufficient to support the trial court's conclusion that defendant knew Hamende was over 60 years of age.

¶ 25        First, the State argues that knowledge of Hamende's age can be inferred from Hamende's physical characteristics, such as his "turned down eyelids, pronounced bags under his eyes, excess neck skin, and wrinkles," as well as his style of mustache. Next, the State argues that the time defendant and Hamende spent working in close proximity to one another leads to the inference that defendant knew Hamende's age.

¶ 26        Importantly, we note that Hamende testified before the court, allowing the court to make observations about Hamende's physical characteristics and mannerisms that this court is unable to replicate. Such eyewitness observations of Hamende's appearance, voice, mannerisms, and method of ambulation are relevant considerations for the trier of fact when considering Hamende's age. See *id.* ("[W]e note that, because [the victim] testified, the trier of fact had an opportunity to observe her appearance and assess whether it provided an indication of her age."). Moreover, it is undisputed that defendant, having worked closely with Hamende for six weeks, would have made similar observations over a more extended time.

¶ 27        In reviewing the sufficiency of the evidence at trial, we must construe that evidence in the light most favorable to the State. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). This approach requires deference to the trier of fact for matters in which it is in a better position than us to determine. See *People v. Jackson*, 2020 IL 124112, ¶ 69. Given these considerations, we find that a rational trier of fact, based on photographs and its own observations of Hamende, could

7

reasonably conclude that Hamende was plainly over 60 years of age, and that defendant himself had reached the same conclusion. See *Collins*, 106 Ill. 2d at 261. We therefore find the evidence presented under count II of the indictment to be sufficient.

¶ 28                                    C. One-Act, One-Crime Doctrine

¶ 29        Finally, defendant argues that only one of his aggravated battery convictions may stand under one-act, one-crime principles, as each charge was based upon the same physical act. Specifically, he points out that each charge alleged that defendant "grabbed *** Hamende about the body and forced him to the ground." Defendant admits that he failed to preserve this issue but argues that we should address it under the doctrine of plain error.

¶ 30        The one-act, one-crime doctrine mandates that one physical act may give rise to only a single criminal conviction. *People v. King*, 66 Ill. 2d 551, 566 (1977). In determining whether a defendant committed multiple acts that may sustain multiple convictions, courts first look to the charging instrument. See *People v. Crespo*, 203 Ill. 2d 335, 345 (2001) ("[T]he indictment must indicate that the State intended to treat the conduct of defendant as multiple acts in order for multiple convictions to be sustained."). "[U]nder the one-act, one-crime doctrine, sentence should be imposed on the more serious offense and the less serious offense should be vacated." *People v. Artis*, 232 Ill. 2d 156, 170 (2009). Further, a one-act, one-crime violation is reversible under the second prong of the plain error doctrine. *Id.* at 169.

¶ 31        The State concedes that the indictment in this case alleged the same physical act with respect to all three charges, and that vacatur of two of defendant's three convictions is mandated by the one-act, one-crime doctrine pursuant to the second prong of plain error. It is clear that the State's concession of error is supported by the record because a single physical act formed the basis for all three counts of the indictment.

8

¶ 32    Defendant's conviction for aggravated battery under count I of the indictment, which we have affirmed, is a Class 2 felony. 720 ILCS 5/12-3.05(a)(4), (h) (West 2016). His convictions under count II and count III are for Class 3 felony forms of aggravated battery. *Id.* §§ 12-3.05(c), (d)(1), (h). We vacate those lesser offenses. *Artis*, 232 Ill. 2d at 170.

¶ 33                                        III. CONCLUSION

¶ 34    The judgment of the circuit court of Will County is affirmed.

¶ 35    Affirmed.

¶ 36    JUSTICE LYTTON dissenting:

¶ 37    I disagree with the majority's conclusions regarding the sufficiency of the evidence. Even considering the evidence in the light most favorable to the State, a rational trier of fact could not conclude beyond a reasonable doubt that Hamende suffered great bodily harm or that defendant knew Hamende to be over 60 years old. I therefore respectfully dissent.

¶ 38                                      A. Great Bodily Harm

¶ 39    The majority concludes that the evidence was sufficient to prove that the sum total of Hamende's injuries amounted to great bodily harm. In reaching this conclusion, the majority relies largely on what it describes as evidence of "significant bleeding" (*supra* ¶ 18) and Hamende's testimony that the injury to his ear required 17 stitches. The majority asserts that "[t]he photographic evidence corroborated Hamende's testimony." *Supra* ¶ 17.

¶ 40    On the contrary, the photographic evidence in the record actually undermines Hamende's testimony. As the majority points out, even a layperson understands that a wound requiring 17 stitches is serious. Yet, a close-up photograph of the right side of Hamende's head shows no apparent wound on or around his ear, let alone one that would require 17 stitches. No rational trier

9

of fact could view that photograph and still find credible Hamende's testimony regarding the treatment he received.

¶ 41　　　　Furthermore, the photographic evidence from the scene does not show that there was "significant bleeding." The blood on the desk is smeared and diluted, in an apparent attempt to clean it up, such that it cannot be determined how much blood was there originally. While other photographs do show numerous droplets of blood on a tile floor, the fact that the blood appears as countable individual droplets tends to undermine the notion that Hamende was bleeding profusely. Indeed, in support of its reasoning, the majority cites a case in which great bodily harm was found in part because the victim's shirt was "completely soaked" with blood. *Cisneros*, 2013 IL App (3d) 110851, ¶ 13. Yet here, photographs showing the upper portions of Hamende's shirt show no blood whatsoever, again undermining the notion of "significant bleeding."

¶ 42　　　　In *J.A.*, 336 Ill. App. 3d at 820, the reviewing court found the evidence insufficient to prove that the single stab wound suffered by the victim amounted to great bodily harm. The court summarized the insufficient evidence as follows:

> "In this case, the record reflects no evidence of the nature and extent of the injury beyond the fact that the victim felt like he had been pinched and he was advised to have the wound stitched. No medical testimony or other testimony regarding the nature and extent of the single wound was offered. No evidence as to the number of stitches recommended was offered. The record reflected no evidence describing the wound." *Id.* at 818.

¶ 43　　　　In this case, unlike *J.A.*, Hamende could not even recall how, specifically, he suffered his injuries. He did not testify that he felt any pain. The only evidence as to the number of stitches required was, as discussed above, refuted by the photographic evidence. No medical records or

10

testimony, evidence that would have been potentially useful in corroborating Hamende's account of his treatment, was offered at the trial. The State proved that Hamende suffered minor lacerations to his arm and nose, that required no apparent medical treatment, and that Hamende's injuries produced a moderate amount of blood. No rational trier of fact could conclude beyond a reasonable doubt that these facts amounted to great bodily harm.

¶ 44                                              B. Hamende's Age

¶ 45        The majority agrees that the State produced no direct evidence of defendant's knowledge of Hamende's age. However, it concludes that the circuit court, sitting as trier of fact, could have inferred defendant's knowledge from its own physical observations of Hamende. In other words, the court could conclude from its observations that Hamende must be over 60 years old, and thus infer that defendant could have reached the same conclusion. This approach threatens to effectively eliminate the knowledge requirement of section 12-3.05(d)(1) and must be rejected. See 720 ILCS 5/12-3.05(d)(1) (West 2016).

¶ 46        In certain circumstances, knowledge of the victim's age may be reasonably inferred. For instance, the physical characteristics of an 85-year-old person may allow a reasonable and uncontroversial inference that the person is over 60 years of age. Hamende, however, was not 85 years old. He was 61 years old, one year over the statutory minimum age for the charged offense. The idea that a defendant, or any trier of fact, could infer anyone's age within a two-year range of accuracy should be rejected as a matter of law. Under the majority's reasoning, the State is simply required to prove nothing more than the victim's age, and any knowledge on the part of a defendant may be inferred therefrom.

¶ 47        The majority declines to perform a substantive review of the evidence, instead noting that we must defer to the circuit court for observations we are unable to make. First, we are not unable

11

to replicate those observations. Multiple close-up photographs of Hamende's face appear on the record. They show a man who could be in his late 40s, 50s, or early 60s. In fact, these photographs are stronger evidence that the circuit court's purported observations, as they were taken on the day of the offense, while defendant's bench trial occurred more than 10 months later. Furthermore, it is not entirely clear what conclusions about Hamende's age the court could reach from his "voice, mannerisms, and method of ambulation." *Supra* ¶ 26.

¶ 48 More fundamentally, the majority's choice to defer to observations that it speculates the circuit court may have made precludes meaningful review of defendant's conviction. Under the majority's approach, where a defendant is charged with aggravated battery under section 12-3.05(d)(1), and the State proves that the victim was over 60 years old, a court of review has no choice but to rubber stamp that conviction. This will happen where, as here, there is no direct or circumstantial evidence that defendant knew the victim's age.

¶ 49 In sum, I would find the evidence insufficient with respect to counts I and II of the indictment. I would therefore reverse those convictions outright and remand the matter for resentencing on count III.